Patricia Lynn Jacks
Attorney at Law
CA State Bar No. 226300
5790 Friars Road F8
San Diego, CA 92110
Tel. (619) 574-1625
Attorney for Petitioner


UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DMITRI VALLERVEICH TATARINOV,

      Petitioner,

                            PETITION FOR WRIT OF HABEAS
                            CORPUS UNDER 28 U.S.C. §2241

      v.

SUPERIOR COURT OF THE STATE OF

CALIFORNIA, COUNTY OF SAN DIEGO,

      Respondent.


**EXCERPTS OF RECORD**
**PETITIONER DMITRI VALLERVEICH TATARINOV**

Patricia Lynn Jacks
Attorney at Law
CA State Bar No. 226300
5790 Friars Road F8
San Diego, CA  92110
Tel. (619) 574-1625
Attorney for Petitioner

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DMITRI VALLERVEICH TATARINOV,

        Petitioner,

                                PETITION FOR WRIT OF HABEAS
                                CORPUS UNDER 28 U.S.C. §2241

        v.

SUPERIOR COURT OF THE STATE OF

CALIFORNIA, COUNTY OF SAN DIEGO,

        Respondent.

**EXCERPTS OF RECORD**
**PETITIONER DMITRI VALLERVEICH TATARINOV**

# INDEX

## FROM DISTRICT COURT DOCUMENT 1

DECLARATION OF PATRCIA JACK-TATARINOV..................................................... 1

    (Appendix A in the Petition for Writ of Habeas Corpus)

DECLARATION OF PETITIONER DIMITRI VALLERVEICH TATARINOV............ 5

    (Appendix B in the Petition for Writ of Habeas Corpus)

DOCKET ENTRIES FROM CALIFORNIA APPEAL, CASE D027293........................ 8

    (Appendix C in the Petition for Writ of Habeas Corpus)

MOTION TO SET ASIDE DISMISSAL, FILED BY ATTORNEY
    VERHOVSKOY...........................................................................................................13

    (Appendix D in the Petition for Writ of Habeas Corpus)

COURT OF APPEAL ORDER DATED SEPTEMBER 24, 1999...................................23

    (Appendix E in the Petition for Writ of Habeas Corpus)

CALIFORNIA SUPERIOR COURT MINUTE ORDERS ...........................................25

    (Appendix F in the Petition for Writ of Habeas Corpus)

LETTER DATED DECEMBER 12, 2000, FROM ATTORNEY VERHOVSKOY.......29

    (Appendix G in the Petition for Writ of Habeas Corpus)

SUBPEONA ISSUED BY THE STATE BAR OF CALIFORNIA FOR FILE
    IN SUPERIOR COURT C ASE SCD119330...........................................................31

    (Appendix H in the Petition for Writ of Habeas Corpus)

COPY OF ORDER DENYING MOTION TO RECALL REMITTITUR, VACATE
    DISMISSAL AND REINSTATE APPEAL, FILED SEPT. 20, 2001....................33

    (Appendix "I" in the Petition for Writ of Habeas Corpus)

COPY OF ORDER DENYING PETITION FOR REVIEW  OF MOTION TO
    RECALL REMITTITUR , VACATE DISMISSAL AND REINSTATE
    APPEAL, FILED DECEMBER 12, 2001.................................................................35

    (Appendix J in the Petition for Writ of Habeas Corpus)

COPY OF ORDER OF CALIFORNIA COURT OF APPEAL DENYING
    PETITION FOR WRIT OF HABEAS CORPUS FILED JUNE 25, 2002 ............37

    (Appendix K in the Petition for Writ of Habeas Corpus)

COPY OF ORDER OF CALIFORNIA SUPREME COURT DENYING
    PETITION FOR REVIEW OF WRIT OF HABEAS CORPUS,
    FILED AUGUST 28, 2002 ......................................................................................39

    (Appendix L in the Petition for Writ of Habeas Corpus)

COPY OF ARGUMENT FROM THE FEDERAL PETITION FOR WRIT OF
    HABEAS CORPUS EXPLAINING TOLLING PURSUANT TO
    28 U.S.C. § 2244(d)(1) ...........................................................................................41

    (Consisting of pages 18 through 20 in the petition)

# INDEX

COPY OF ARGUMENT FROM THE FEDERAL PETITION FOR WRIT OF
HABEAS CORPUS EXPLAINING HOW PETITIONER WAS
PREJUDICED BY TRIAL COUNSEL'S INEFFECTIVE ASSISTANCE......................45

(Includes pages 24 through 35 of the federal habeas petition)

FROM DISTRICT COURT DOCUMENT 11

REPORT AND RECOMMENDATION OF MAGISTRATE ROGER T. BENITEZ
RE: GRANTING MOTION TO DISMISS HABEAS PETITION...................................58

FROM DISTRICT COURT DOCUMENT 13

ORDER OF UNITED STATES DISTRICT JUDGE THOMAS J. WHELAN
ADOPTING REPORT AND RECOMMENDATION.....................................................75

FROM DISTRICT COURT DOCUMENT 14

JUDGMENT OF THE UNITED STATES DISTRICT COURT DISMISSING
THE HABEAS PETITION, FILED JUNE 16, 2003.......................................................87

FROM DISTRICT COURT DOCUMENT 16

NOTICE OF APPEAL, FILED JULY 11, 2003................................................................89

DISTRICT COURT CIVIL DOCKET FOR CASE 02-CV-2029....................................91

FROM COURT OF APPEALS

GRANTING CERTIFICATE OF APPEALABILITY, FILED OCT 32, 2003...........95

FROM COURT OF APPEALS

APPEAL OF DISTRICT COURT'S DENIAL OF FEDERAL HABEAS

PETITION.............................................................................................................................96

FROM COURT OF APPEALS

APPELLANT'S PETITION FOR REHEARING,  FILED AUG 25, 2004..............99

FROM COURT OF APPEALS

DENIAL OF APPELLANT'S PETITION FOR REHEARING, FILED
SEPTEMBER 28, 2004...................................................................................................106

FROM SUPERIOR COURT OF THE STATE OF CALIFORNIA

NONSTATUTORY MOTION TO VACATE A PLEA ENTERED ON GROUNDS OF
INEFFECTIVE ASSISTANCE OF COUNSEL, FILED SEPT 25, 2006...................107

FROM SUPERIOR COURT OF THE STATE OF CALIFORNIA

MEMORANDUM IN SUPPORT OF NONSTATUTORY MOTION TO VACATE
   A PLEA ENTERED ON GROUNDS OF INEFFECTIVE ASSISTANCE OF
   COUNSEL...............................................................................................111
   (Includes Exhibits not found in trial record)

FROM COURT OF APPEALS

   NOTICE OF APPEAL, FILED NOVEMBER 2, 2006........................................127

FROM COURT OF APPEALS

   DISMISSAL OF APPELLANT'S APPEAL.................................................136

FROM SUPREME COURT OF CALIFORNIA

   DENIAL OF APPELLANT'S PETITION FOR REVIEW....................................137

FROM THE STATE BAR OF CALIFORNIA

   COMPLAINT FORM...................................................................................128

   DISCIPLINARY RESPONSE.......................................................................131

FROM DISTRICT COURT DOCUMENT 1

<u>Declaration of Patricia JacksTatarinov</u>

Exhibit A to the Federal Habeas Petition

Consisting of page A-1 through A-3 of Doc 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DIMITRI VALERYEVICH TATARINOV,

Petitioner,

v.

SUPERIOR COURT OF THE STATE OF
CALIFORNIA,

DECLARATION OF
PATRICIA LYNN
JACKS-TATARINOV
IN SUPPORT OF
PETITION FOR WRIT
OF HABEAS CORPUS

I, Patricia Lynn Jacks-Tatarinov, am the wife of the defendant Dimitri Valeryevich Tatatrinov. We have been married since February 9, 1994. My husband is Russian. He immigrated to the United States in 1992. Russian is his first language. He has learned English since coming to this country. I do not speak Russian. We communicate only in English.

In 1996 we retained attorney Vladimir Verhovsky to represent my husband on a robbery charge brought against him as the result of an incident at a Nordstrom store on March 6, 1996. Mr. Verhovsky speaks fluent Russian and often communicated with my husband in the Russian language. He represented my husband at trial. My husband used a Russian interpreter at trial.

After a jury convicted my husband of robbery, we paid Attorney Verhovsky $2,500 as a retainer to represent my husband to appeal the conviction. We have paid Mr. Verhovsky a total of more than $20,000 to represent my husband on various matters, including but not limited to immigration pro-

EXHIBIT A
page 1

ceedings that were instituted after the robbery conviction. The last payment was made in late November or early December 2000.

From late fall of 1996 through the summer of 1998, I continually asked Mr. Verhovsky how the robbery appeal was going. He gave responses such as, "appeals take several months," "appeals can take years," "the appeals court must believe we have some merit to the case as they have not responded," "I will call and check the status," and "the court is still looking into the matter." Having no legal background, I believed what Mr. Verhovsky told me. During the summer of 1998, however, I felt something was wrong. I called the superior court and spoke with someone in the records department. I was told the appeal was not active. I immediately called Mr. Verhovsky. He admitted he had not filed the appeal. I told him to tell my husband. Prior to that time, I had found myself "in the middle" between Mr. Verhovsky and my husband on a number of occasions. I did not understand the legal process and felt it was Mr. Verhovsky's job to explain how the problem happened and how it could be solved.

It took Mr. Verhovsky several months to tell my husband he had not filed the appeal. I repeatedly asked Mr. Verhovsky to do something to get the appeal started again. He gave a series of excuses, telling me it takes time, that he was working on it, and the like. I suggested to my husband on several occasions that he retain another attorney, as it appeared Mr. Verhovsky was not doing his job. My husband told me he wanted to stay with Mr. Verhovsky. My husband seemed loyal to Mr. Verhovsky because they are both Russian, and both speak Russian. Finally, in September 1999 Mr. Verhovsky filed a motion to reinstate the appeal. In less than a month he said the court denied the motion.

After that happened, Mr. Verhovsky led us to believe that nothing further could be done to revive the appeal. I do not recall what he said about

EXHIBIT A
Page 2

that, but do recall he proposed an alternate strategy.  He suggested we ask the superior court to terminate my husband's probation and expunge the conviction.   He filed a motion in April 2000 and asked the superior court to do that.  The court heard and denied the motion on April 13, 2000.  He made a second, similar motion that was denied by the superior court on November 3, 2000.

At that time, Mr. Verhovsky continued to represent my husband on an immigration matter.  On November 28, 2000, he requested a payment of $500.  We paid him promptly.   On December 24, we received a letter from Mr. Verhovsky stating he had resigned from all of my husband's cases.  The letter did not explain why.  On January 19, 2001, we received a copy of the State Bar of California's *Stipulation Form – Actual Suspension* indicating Mr. Verhovsky was "suspended from the practice of law in the State of California for a period of sixty (60) days."  We have since retained attorney James R. Patterson to represent my husband in the immigration case.

I took a course in criminal procedure during the summer of 2001.  During the course it occurred to me that perhaps something could be done to revive my husband's appeal from the robbery conviction.  I talked to my instructor about it and obtained a referral that led me to Attorney Wallingford.  We retained him to take action to reinstate the appeal, and have recently asked him to prepare a petition for writ of habeas corpus.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: _10/9/2002_

Patricia Lynn Jacks-Tatarinov
Patricia Lynn Jacks-Tatarinov

EXHIBIT A
Page 3

EXCERPTS OF RECORD p. 4

FROM DISTRICT COURT DOCUMENT 1

<u>Declaration of Petitioner Dmitri VallerveichTatarinov</u>

Exhibit B to the Federal Habeas Petition

Consisting of page B-1 through B-2 of Doc 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

1

2

3

4

5

DIMITRI VALERYEVICH TATARINOV,

6

Petitioner,

7

v.

8

SUPERIOR COURT OF THE STATE OF
CALIFORNIA,

9

10

|  |  |
|---|---|
| | DECLARATION OF DMITRI VALLERVEICH TATARINOV IN SUP-PORT OF PETITION FOR WRIT OF HABEAS CORPUS |

11    I, Dmitri Vallerveich Tatarinov, am the petitioner in the captioned

12 case. I am married to Patricia Lynn Jacks-Tatarinov. I immigrated from Rus-

13 sia to the United States in 1992. My first language is Russian. I have learned

English since coming to this country and communicate with my wife in Eng-

14 lish. However, when I appear in court I use a Russian interpreter.

15    In 1996 I retained attorney Vladimir Verhovsky to represent me on

16 a robbery charge involving an incident at a Nordstrom store on March 6, 1996.

17 Mr. Verhovsky speaks fluent Russian. We often communicated in the Russian

18 language. He represented me at trial.

19    After a jury convicted me of robbery, my wife and I paid Attorney

20 Verhovsky to represent me in the appeal. After that, I sometimes asked him

21 how the appeal was going. He always told me the appeal was in progress. In

22 1998, Mr. Verhovsky admitted that he had not filed the appeal. I asked him

several times to do something about it. Each time he said he would. Finally, in

23 September 1999 Mr. Verhovsky filed a motion to reinstate the appeal. Later he

24 told me the motion was denied. I believed the appeal was over and nothing

25 more could be done about it.

EXHIBIT B
Page 1

EXCERPTS OF RECORD p. 6

1   Many times my wife told me I should hire a new attorney.  I told

2 her no, I wanted Mr. Verhovsky to represent me.  I felt comfortable with Mr.

3 Verhovsky because he could explain things to me in Russian.  Also, because he

4 is Russian, I felt he understood me and was trying to help me.

5   Many of the details of my dealings with Mr. Verhovsky are ex-

6 plained in my wife's declaration, exhibit A.  I have read her declaration and it

7 has been explained to me.  Her declaration appears to be completely accurate.

8   I declare under penalty of perjury that the foregoing is true and

9 correct.

10 DATED: _10/07/2002_    _Dmitri Tatarinov_
            Dmitri Vallerveich Tatarinov

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

FROM DISTRICT COURT DOCUMENT 1

Docket Entries, California Court of Appeal Case Number D027293

Exhibit C to the Federal Habeas Petition

Consisting of page C-1 through C-4 of Doc 1

COURT OF APPEAL OF THE STATE OF CALIFORNIA
FOR THE FOURTH APPELLATE DISTRICT
DIVISION 1

PEOPLE OF THE STATE OF CALIFORNIA
□          Plaintiff-Respondent
v.
TATARINOV, DIMITRI VALERYEVICH
□          Defendant-Appellant

CASE NUMBER:   D027293
NOA/PET DATE:  10/25/96
STATUS:        Complete
PRIORITY:      High priority
CAUSE:         Appeal
CASE TYPE:     Criminal
DISP DATE:     04/28/97
FINAL DISP:    17a
ORIGIN:        Received from superior court
CATEGORY:      crdt   Jury trial conviction

## TRIAL COURT INFORMATION

Case No.:   SCD119330
County:     San Diego
Court:      San Diego County Superior Court
Judge:      Ehrenfreund
Jud. Date:  09/10/96

## ATTORNEY - PARTY

Office Of The State Attorney General          Bar No. SAGSDG-01
P O Box 85266
San Diego, CA  92186-5266

    Plaintiff-respondent
    People Of The State Of Calif.

Vladimir Verhovskoy                           Bar No. 00094039
10388 Viacha Dr.
San Diego, CA  92124

    Defendant-appellant
    Dimitri Valeryev Tatarinov
    Richard J. Donovan Correctional Facility
    P.O. Box 73200
    San Ysidro, CA  92073

EXHIBIT C page 1

Appellate Defenders Inc.                          Bar No. ADFI-001
233 A Street, 12th Floor
San Diego, CA  92101-4010

    Unknown
    Unknown


   DOCKET ENTRIES

11/14/96
Notice of appeal lodged/received (criminal).
Filed October 25, 1996 By Tatarinov

11/14/96
Telephone conversation with:
Atty. Verhovskoy - Has Been Retained On Appeal By
Appellant.

01/23/97
Order filed.
Record Returned To Superior Court For Compliance
With Rule 9.  Due Back In 15 Days.  P J

02/03/97
RECORD ON APPEAL FILED.************
C-1, R-9, Includes Preliminary Hearing; One
Conf. Envelope = Probation Report; Master Index

03/20/97
Appellant notified pursuant to rule 17(a).

04/28/97
Dismissal order filed.
Dismissed For Appellant'S Failure To File A Brief
After 17a Notice. Kremer, P. J.

07/01/97
Remittitur issued.

09/10/97
Mail returned, unable to forward.
Dismissal Order To Appellant Returned

08/29/98
Case complete.

03/25/99
Record in storage with Cor-O-Van.


            Exhibit C   page 2

D027293 as of 8/9/01

09/10/99
Motion filed.
Motion to Set Aside Dismissal and Reinstate Appeal
oppo due 9-20

09/10/99
Record Received from Storage.

09/24/99
Order filed.
Appellant's Motion to Set Aside Dismissal and to Reinstate Appeal
filed on September 9, 1999 is DENIED.  Haller, APJ

09/29/99
Record Returned to Storage.

08/08/01
Record Received from Storage.


CASE DISPOSITION / JUDGES PANEL INFORMATION

Disposition:    17a
Date:           04/28/97
Status:         Final Disposition
Opinion Type:
Citation:
Notes:          KREMER, P J

Authoring Judge:
                                                    VOTE

        Judge 1:
        Judge 2:
        Judge 3:


COURT REPORTER INFORMATION

Name:                   J.    (A-2) Castro
CSR No.:                90607
Trial Court Case No.:   SCD119330
Estimated Compl. Date:  01/13/97
Filed Date:             01/14/97
Number of Extensions:   0


EXHIBIT C   page 3


EXCERPTS OF RECORD p. 11   D027293 as of 8/9/01

```
Name:                      O. (1) Correa
CSR No.:                   90686
Trial Court Case No.:      SCD119330
Estimated Compl. Date:     01/13/97
Filed Date:                01/14/97
Number of Extensions:      0


Name:                      John Ross Avery
CSR No.:                   8605
Trial Court Case No.:      SCD119330
Estimated Compl. Date:     01/13/97
Filed Date:                12/27/96
Number of Extensions:      0


Name:                      Lois Elaine Mason
CSR No.:                   3685
Trial Court Case No.:      SCD119330
Estimated Compl. Date:     01/13/97
Filed Date:                12/16/96
Number of Extensions:      0


Name:                      Cynthia H Becker
CSR No.:                   3998
Trial Court Case No.:      SCD119330
Estimated Compl. Date:     01/13/97
Filed Date:                01/15/97
Number of Extensions:      0
```

END OF DOCKET SHEET

EXHIBIT C   page 4

EXCERPTS OF RECORD p. 12    D027293 as of 8/9/01

FROM DISTRICT COURT DOCUMENT 1

Motion to Set Aside Dismissal Filed by AttorneyVerhovskoy

Exhibit D to the Federal Habeas Petition

Consisting of page D-1 through D-9 of Doc 1

EXCERPTS OF RECORD p. 13

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION ONE

PEOPLE OF THE STATE OF CALIFORNIA, ) NO.  D 027293
                                    )
            Plaintiff and Respondent, ) SUPER CT NO.  119330
                                    )
v.                                  )
                                    )
DIMITRI VALERYEVICH TATARINOV,      )
                                    )
            Defendant and Appellant. )
_____ )

---

### MOTION TO SET ASIDE DISMISSAL AND TO REINSTATE APPEAL, SUPPORTING DECLARATION AND POINTS AND AUTHORITIES

---

On Appeal From the Judgment of the Superior Court

of the State of California, San Diego County,

Honorable Norbert Ehrenfreund, Judge

> Vladimir Verhovskoy, Esq. (97039)
> VERHOVSKOY & ASSOCIATES
> PO Box 620129
> San Diego, CA 92162-0129
> (619) 702-5852
>
> Attorney for Defendant and
> Appellant DIMITRI VALERYEVICH
> TATARINOV

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION ONE

PEOPLE OF THE STATE OF CALIFORNIA, )  NO.  D 027293
                                    )
     Plaintiff and Respondent,       )  SUPER CT NO.  SCD 119330
                                    )
v.                                  )
                                    )
DIMITRI VALERYEVICH TATARINOV,      )
                                    )
     Defendant and Appellant.        )
_____ )

MOTION TO SET ASIDE DISMISSAL AND TO
REINSTATE APPEAL [CAL RULES OF CT, RULE 45(e)]

TO THE HONORABLE PRESIDING JUSTICE AND ASSOCIATE JUSTICES OF THE COURT OF APPEAL OF THE STATE OF CALIFORNIA, FOURTH APPELLATE DISTRICT, DIVISION ONE:

Appellant moves this court for an order setting aside the dismissal of this appeal entered on April 28, 1997, and for permission to file appellant's opening brief.

The motion is made on the grounds that good cause exists for relieving appellant from his default under rule 45(e) of the California Rules of Court in that said default was solely the result of counsel's inadvertence, surprise, and/or neglect, and said dismissal was entered through no fault of appellant.

EXHIBIT Dpage 2

EXCERPTS OF RECORD p. 15

The motion is based on the declaration of Vladimir Verhovskoy, Esq. and the memorandum of points and authorities served and filed herewith and on the papers and records on file herein.

Dated: September 9, 1999

VLADIMIR VERHOVSKOY, Attorney for
Defendant and Appellant DIMITRI
VALERYEVICH TATARINOV

EXHIBIT D - page 3

EXCERPTS OF RECORD p. 16

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

### DIVISION ONE

PEOPLE OF THE STATE OF CALIFORNIA, )  NO.  D 027293
                                    )
    Plaintiff and Respondent,    )  SUPER CT NO.  SCD 119330
                                    )
v.                                  )
                                    )
DIMITRI VALERYEVICH TATARINOV,      )
                                    )
    Defendant and Appellant.     )
                                    )

---

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant and Appellant DIMITRI VALERYEVICH TATARINOV respectfully submits the following memorandum of points and authorities in support of his motion to set aside dismissal and to reinstate appeal.

## I.

## STATEMENT OF THE CASE

Appellant was tried by jury for charges of violations of Penal Code section 211 [robbery] and Penal Code section 148, subdivision (a) [resisting an officer] arising out of an incident at Nordstrom's Department Store in La Jolla, California on March 6, 1996. On August 12, 1996, the jury delivered verdicts of guilty as to the robbery charge (Count I of

EXHIBIT D. · page 4

the Amended Information) and not guilty as to resisting an officer (Count II of the Amended Information). At sentencing, on September 10, 1996, appellant was granted probation with imposition of sentence suspended for three years. As conditions of probation, appellant was ordered to be committed to the custody of the Sheriff for 270 days (with 87 days' credit), to pay a fine of $200.00, and to pay restitution in the amount of $200.00. On October 25, 1996, defendant filed his Notice of Appeal. The Clerk's Transcript was forwarded on November 25, 1996, followed, shortly thereafter, by the Reporter's Transcript. Because appellant failed to file a brief after notice pursuant to rule 17(a) of the California Rules of Court, the appeal was dismissed on April 28, 1997.

## II.

### THIS COURT SHOULD GRANT THE REQUESTED RELIEF FROM DEFAULT BECAUSE THE DEFAULT OCCURRED THROUGH NO FAULT OF APPELLANT AND THIS APPLICATION IS ACCOMPANIED BY AN ATTORNEY'S AFFIDAVIT OF FAULT

Rule 45(e) of the California Rules of Court authorizes the reviewing court to relieve a party from a default caused by the failure to comply with the Appellate Rules of Court. Case law provides that an applications for relief from default in filing a brief is based on mistake, inadvertence, surprise, or neglect, similar to an application under section 473 of the Code of Civil Procedure (*Sanders* v. *Warden* (1951) 106 Cal.App.2d 707, 708; *Clinton* v. *Shaw* (1943) 57 Cal.App.2d 630, 633-634).

EXHIBIT D   page  5

EXCERPTS OF RECORD p. 18

Section 473 of the Code of Civil Procedure provides, among other things, that whenever an application for relief is accompanied by an attorney's affidavit of fault, relief from default is mandatory. If the attorney is willing to take the blame, the court must set aside the default. The client's interests are protected and the culpable attorney avoids a potential malpractice action or disciplinary proceeding (see *Beeman* v. *Burling* (1990) 216 Cal.App.3d 1586, 1604). Moreover, there is no requirement that the attorney's mistake, inadvertence, or neglect be excusable. Relief must be granted even where the default resulted from inexcusable neglect by the defendant's attorney (*ibid.*). The court is not concerned with the reasons for the attorney's mistake (*Billings* v. *Health Plan of America* (1990) 225 Cal.App.3d 250).

Financial distress and illness of counsel were found to be sufficient grounds for relief from the appellant's default in failing to timely file the opening brief in *Ventura County Title Co.* v. *Constance* (1936) 7 Cal.2d 684, 684-685). As the attached declaration shows, appellant's counsel in this case was experiencing similar problems.

In addition to the judicial policy of favoring hearings of appeal on the merits (*Haskins* v. *Crumley* (1957) 152 Cal.App.2d 64, 66), the most important concern is the preservation of an innocent (as to the default) appellant's right to appeal. The supreme court reinstated the appeal in *In re Martin* (1962) 58 Cal.2d 133, when it was established that appellant had not known of the dismissal or likelihood of dismissal due to the inaction of his trial counsel. Likewise in *In re Serrano* (1995) 10 Cal.4th 447, where the defendant's family had paid a substantial fee to an attorney, but the attorney had done nothing to prepare the brief.

EXHIBIT D    page 6

EXCERPTS OF RECORD p. 19

Finally, it should be noted that granting of the relief requested herein has taken on new urgency for appellant in that, having completed the required period of custody as a condition of probation, appellant is now in deportation proceedings and under the complete control of the Immigration and Naturalization Service. The draconian nature of the current federal immigration laws has forced individuals subject to these regulations to look to state courts as a last resort to ease their plight. Needless to say, deportation would have truly devastating effects on appellant, including the breakup of his marriage, loss of his business, and the potential for persecution in his native Russia.

## III.

## CONCLUSION

As the foregoing shows, appellant is entitled to the requested relief; and, because denial thereof would result in appellant facing a punishment grossly disproportionate to the crime appellant was convicted of, this court should exercise its discretionary and equitable powers and grant the instant motion.

Respectfully submitted,

VLADIMIR VERHOVSKOY, Attorney for
Defendant and Appellant DIMITRI
VALERYEVICH TATARINOV

EXHIBIT D       page **7**

EXCERPTS OF RECORD p. 20

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION ONE

PEOPLE OF THE STATE OF CALIFORNIA, )    NO.  D 027293
                                     )
              Plaintiff and Respondent, )    SUPER CT NO.  SCD 119330
                                     )
v.                                   )
                                     )
DIMITRI VALERYEVICH TATARINOV,    .  )
                                     )
              Defendant and Appellant.  )
_____ )

---

### DECLARATION OF VLADIMIR VERHOVSKOY, ESQ.

I, the undersigned, declare as follows:

1.      I am an attorney at law duly licensed and admitted to practice in the State of California and am the attorney of record for DIMITRI VALERYEVICH TATARINOV, the defendant and appellant herein.

2.      On April 28, 1997, appellant's appeal was dismissed for failure to timely file an opening brief. Entry of said dismissal was the result of my mistake, inadvertence, surprise and/or neglect as more fully set forth below.

3.      I represented appellant at his trial which resulted in a guilty verdict on one of the counts appellant had been charged with on August 12, 1996. After sentencing on September 10, 1996, I timely filed a Notice of Appeal on October 25, 1996, and the record

on appeal was perfected in a timely fashion as well.

4.      Notwithstanding the foregoing, I failed to file appellant's opening brief, which resulted in an entry of dismissal on April 28, 1997. This failure on my part was due to financial and medical catatrophes.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: September 9, 1999

VLADIMIR VERHOVSKOY, Attorney for
Defendant and Appellant DIMITRI
VALERYEVICH TATARINOV

EXHIBIT D   page 9

EXCERPTS OF RECORD p. 22

FROM DISTRICT COURT DOCUMENT 1

Court of Appeal Order Dated September 24, 1999

Exhibit E to the Federal Habeas Petition

Consisting of page E-1 of Doc 1

COURT OF APPEAL - STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION ONE

F I L E D
Stephen M. Kelly, Clerk

SEP 2 4 1999

Court of Appeal Fourth District

PEOPLE OF THE STATE OF CALIFORNIA
    Plaintiff-Respondent
    v.
TATARINOV, DIMITRI VALERYEVICH
    Defendant-Appellant
D027293
San Diego County No. SCD119330


THE COURT:

    Appellant's Motion to Set Aside Dismissal and to Reinstate Appeal filed on
September 9, 1999 is DENIED.

_____
Acting Presiding Justice


cc: All Parties


EXHIBIT E page 1

EXCERPTS OF RECORD p. 24

TOTAL P.07

FROM DISTRICT COURT DOCUMENT 1

CaliforniaSuperior Court Minute Orders

Exhibit F to the Federal Habeas Petition

Consisting of pages F-1 through F-3 of Doc 1

58

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

CASE <u>SCD119330</u> DA <u>P7244201</u> BKG <u>96116303A</u>

JUDGE: <u>HON. DAVID M. SZUMOWSKI</u>
CLERK: <u>FRANCES L. MERCER</u>

DATE <u>04-13-00</u> AT <u>10:00 a.m.</u> IN DEPARTMENT <u>MFA</u>

REPORTER: <u>FRANK BODDEN, CSR # 2621</u>
REPORTER'S ADDRESS: P.O. BOX 120128, SAN DIEGO, CA 92112-0128

### THE PEOPLE OF THE STATE OF CALIFORNIA,
PLAINTIFF,

vs.

<u>DIMITRI VALIRAVICH TATARINOV,</u>
DEFENDANT.

<u>DUSEK, JEFF B.</u> Deputy District Attorney
COUNSEL FOR THE PEOPLE

<u>VERHOVSKOY, VLADIMIR</u> Retained
COUNSEL FOR THE DEFENDANT

## VIOLATIONS

Ct(s):   Ct. 1 PC211**

### PC1203.03 RETURN

The defendant is present.

### SPONTANEOUS MOTIONS

The defendant makes a motion for relief pursuant to PC1203.4. The motion is <u>denied.</u>

### CUSTODY STATUS

The defendant is <u>to remain at liberty on probation.</u>

### OTHER

Defense counsel indicates that the defendant does not require an interpreter. The court excuses the Russian interpreter.

Defense motions the court for probation to revert to summary, motion is GRANTED.

Defense motions the court to permit the defendant to leave the country, motion is GRANTED.

EXHIBIT F   page 1


Judge of the Superior Court

56

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

CASE SCD119330  DA P7244201  BKG 96116303A

JUDGE: HON. DAVID M. SZUMOWSKI

CLERK: COLLEEN LEWIS

THE PEOPLE OF THE STATE OF CALIFORNIA,
                                     PLAINTIFF,

vs.

DIMITRI VALIRAVICH TATARINOV,
                                     DEFENDANT.

DATE 11-03-00 AT 10:00 a.m. IN DEPARTMENT MFA

REPORTER: ALEXANDER, LYNN, CSR # 4489
REPORTER'S ADDRESS: P.O. BOX 120128, SAN DIEGO, CA  92112-0128

HELLSTROM, PER. Deputy District Attorney
COUNSEL FOR THE PEOPLE

VERHOVSKOY, VLADIMIR. Retained
COUNSEL FOR THE DEFENDANT

PROBATION OFFICER: JACKIE RIVERA

**VIOLATIONS**

Ct(s):   Ct. 1 PC211**

**PROB MODIFICATION HG**

The defendant is present.

A Probation Modification Hearing is held.  The modification(s) requested is/are as follows:  terminate probation.  Motion denied.

**CUSTODY STATUS**

The defendant is to remain at liberty on probation.

EXHIBIT F page 2

Page: 1 of 1                    ORIGINAL

Judge of the Superior Court

EXCERPTS OF RECORD p. 27

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

DA _P7244201_

10-19-93 AT _01:30_ M.        96116303        SENT AFTER REVOCATN

HON. _MICHAEL D. WELLINGTON_        JUDGE PRESIDING DEPARTMENT _008_

REPORTER _JULIA K. GILL 3524_        CSR# _____

REPORTER'S ADDRESS: P.O. BOX 128, SAN DIEGO, CA 92112-4104

THE PEOPLE OF THE STATE OF CALIFORNIA
VS.        DEPUTY DISTRICT ATTORNEY

STARINOV    DIMITRI    VALIFAVICH    R. KATZMAN    V. VERHOVSKOY
DEFENDANT        ATTORNEY FOR DEFENDANT (PD/APD/PC/RETAINED)
                J. Powell (PD)

tion OF _PC211 ** CT.1_

INTERPRETER _____        OATH ON FILE/SWORN
LANGUAGE _Russian_

☐ DEFENDANT ☑PRESENT ☐ NOT PRESENT.
☐ DEFENDANT ADVISED OF RIGHTS AND ADMITS/DENIES A VIOLATION OF PROBATION
PROBATION IS: FORMALLY/SUMMARILY ☐ REVOKED ☒ REINSTATED ☐ MODIFIED ☒ CONTINUED ☒ ST&C ☐ EXTENDED TO: _10.18.02_
☐ WAIVES ARRAIGNMENT. ☐ ARRAIGNED FOR JUDGMENT. ☐ IMPOSITION/EXECUTION OF SENTENCE IS SUSPENDED.    ☐ WAIVES HEARING.
☐ PROBATION IS: ☐ DENIED ☐ GRANTED _____ YEARS (FORMAL/SUMMARY) TO EXPIRE _____
☐ COMMITMENT TO SHERIFF FOR _____ DAYS. STAYED TO: _____ ☐ ADULT INST. RECOMMENDED. ☐ PAROLE NOT TO BE GRANTED.
☐ PERFORM _____ HRS/DAYS PSP/VOL. WORK AT NONPROFIT ORG. SUBMIT PROOF TO PROBATION/COURT BY _____
☐ FOURTH AMENDMENT WAIVER OF PERSON/AUTO/RESIDENCE/PERSONAL EFFECTS.    ☐ SHORT TERM WORK FURLOUGH, REPORT: _____
☐ UPON COMPLETION OF CUSTODY, DEFENDANT RELEASED TO U.S.I.N.S./UPON DEPORTATION, FORMAL PROBATION REVERTS TO SUMMARY.
☐ FURTHER CONDITIONS ARE SET FORTH IN PROBATION ORDER. ☐ VEHICLE INTERLOCK DEVICE (VC 23235/23246).
☐ DEFENDANT IS COMMITTED TO THE DEPARTMENT OF CORRECTIONS ☐ PER PC 1170(d).
☐ DEFENDANT IS COMMITTED TO THE CALIFORNIA YOUTH AUTHORITY ☐ PER WI 1737
☐ FOR _____ LOWER/MIDDLE/UPPER TERM OF _____ YEARS/MONTHS/TO LIFE
ON COUNT _____ CODE & NO. _____        ☐ PRINCIPAL COUNT.
☐ NO VISITATION, PER PC 1202.05. VICTIM IS UNDER 18 YRS. OF AGE. DA TO COMPLY WITH NOTICES.
☐ DEFENDANT IS ADVISED REGARDING PAROLE/APPEAL RIGHTS.
☐ REGISTRATION PER PC 290/HS 11590/PC 457.1. ☐ TESTING PER PC 1202.1
☐ CIRCUMSTANCES IN MITIGATION/AGGRAVATION OUTWEIGH THOSE IN MITIGATION/AGGRAVATION.
☐ RESTITUTION FINE OF $ _____ PER PC 1202.4(b). ☐ FORTHWITH PER PC 2085.5.
☐ RESTITUTION FINE OF $ _____ PER PC 1202.45 SUSPENDED UNLESS PAROLE IS REVOKED.
☐ FINE OF $ _____ PLUS PENALTY ASSESSMENT. ☐ RESTITUTION OF $ _____ TO VICTIM(S) PER P.O.'S REPORT/REST. FUND PER PC 1202.4(f).
☐ AT $ _____ PER MONTH. ☐ COMBINED RATE. TO START 60 DAYS AFTER RELEASE/OR _____ THROUGH REVENUE AND RECOVERY.
☐ DEFENDANT TO PAY PRE-PLEA INVESTIGATION AND REPORT PREPARATION COSTS. ☐ DEFENDANT TO PAY BOOKING FEES.
☐ REFERRED TO REVENUE AND RECOVERY. ☐ COURT APPOINTED ATTORNEY FEES ORDERED IN THE AMOUNT OF $ _____

CREDIT FOR TIME SERVED
_____ DAYS LOCAL
_____ DAYS STATE INST.
_____ DAYS PC 4019/2933.1
_____ TOTAL DAYS CREDIT

☐ DEFENDANT REMANDED TO CUSTODY OF SHERIFF. ☐ WITHOUT BAIL. ☐ WITH BAIL SET AT $ _____
☐ DEFENDANT ORDERED RELEASED FROM CUSTODY. ☐ ON PROBATION. ☐ ON OWN/SUPERVISED RECOGNIZANCE. ☐ THIS CASE ONLY.
☒ DEFENDANT TO REMAIN AT LIBERTY. ☐ ON BOND POSTED $ _____ ☒ ON PROBATION. ☐ ON OWN/SUPERVISED RECOGNIZANCE.
☐ DEFENDANT WAIVES STATUTORY TIME FOR PRONOUNCEMENT OF JUDGMENT.
☐ DEFENDANT REFERRED FOR DIAGNOSTIC EVALUATION. ☐ PER PC 1203.03. ☐ PER WI 707.2.
_____ CONTINUED TO/SET FOR _____ AT _____ M. IN DEPT. _____ ON MOTION
OF COURT/DDA/DEFENDANT/PROBATION OFFICER. REASON: _____

☐ BENCH WARRANT TO ISSUE, BAIL SET AT $ _____
☐ BENCH WARRANT ISSUED/ORDERED _____ ☐ SERVICE FORTHWITH. ☐ ORDERED WITHHELD TO _____
☐ BAIL IS ☐ EXONERATED. ☐ FORFEITED. AMOUNT $ _____ IS RECALLED/RESCINDED.
BOND COMPANY _____ BOND NO. _____
_____ AGENT _____

☐ PROCEEDINGS SUSPENDED ☐ PER PC 1368, MENTAL COMPETENCY. (SEE BELOW FOR DATES OF EXAMINATION AND HEARING.)
☐ PER WI 3051, ADDICTION OR DANGER OF ADDICTION. (SEE BELOW FOR SERVICE DATE OF PETITION AND ORDER.)

☐ SUPPLEMENTAL REPORT ORDERED. ☐ REPORT TO REGISTRAR OF VOTERS. ☐ DMV ABSTRACT. B.A.C. _____

(X) Deft waives interpreter Court finds good
cause to use interpreter for sentencing purposes.
(X) Condition (F) and (g) on "order after
hearing" are deleted by Court.        _M D Wellington_

R-28(Rev. 4-98)                EXHIBIT F
                              page 3        JUDGE OF THE SUPERIOR COURT
CRIMINAL MINUTES

EXCERPTS OF RECORD p. 28

FROM DISTRICT COURT DOCUMENT 1.

Letter Dated December 22, 2000 from Attorney Verhovskoy

Exhibit G to the Federal Habeas Petition

Consisting of page G-1 of Doc 1

Post Office Box 620129
San Diego, CA 92162-0129 USA
Tel: 619 702-5852  Fax: 619 702-5853
E-mail: lawtech@pacbell.net

# LawTech International

December 22, 2000

Mr. Dimitri Tatarinov
Mrs. Patricia Lynn Jacks
5790 Friars Rd, #F8
San Diego, CA 92110

Dear Dimitri and Pat:

Subject:  Notice of Withdrawal as Attorney of Record before the Immigration & Naturalization Service

Please be advised that I am withdrawing from representation of your interests before the U.S. Immigration and Naturalization Service, as, likewise, from all other criminal matters.

Your next hearing before the INS court is on March 8, 2001.  Pleadings for that hearing are due by February 7, 2001.

All files are being assembled for your personal use and/or transfer to alternate counsel.  I will arrange to have all file materials delivered to you not later than January 3, 2001, or other counsel you may designate before that time.  This will give you or your new attorney ample and more than adequate time to prepare for the March 8 hearing.

Thank you, happy holidays, and I will you success in this and all other matters in the coming new year.

Sincerely,

Vladimir Verhovskoy, Esq.
Cal. Bar No. 97039

*Member Intertek Group:*
*An association of professional organizations*

EXHIBIT G page 1

EXCERPTS OF RECORD p. 30

FROM DISTRICT COURT DOCUMENT 1


Subpoena Issued by the State Bar of California
for File in Superior Court Case SCD119330

Exhibit H to the Federal Habeas Petition

Consisting of page H-1 of Doc 1



# THE STATE BAR OF CALIFORNIA
## OFFICE OF THE CHIEF TRIAL COUNSEL

# SUBPOENA

01-1277

*(California Business and Professions Code Sections 6049 to 6052 and 6069)*

In the Matter of

A State Bar Investigation

Case No. 01-O-00503

**COURT FILE SUBPOENA**

F I L E D
STEPHEN THUNBERG
Clerk of the Superior Court

JUN 2 8 2001

By: B. Lindahl, Deputy

**THE STATE BAR OF CALIFORNIA, TO:**     Clerk, San Diego Superior Court

1.     **YOU ARE ORDERED TO APPEAR TO TESTIFY AS A WITNESS** in this proceeding at the following time and place:

**DATE:** JULY 9, 2001     **TIME:** 3:00 P.M.

**PLACE:**  THE STATE BAR OF CALIFORNIA
OFFICE OF THE CHIEF TRIAL COUNSEL
ATTENTION:  CONCHA CUELLAR-ROQUE
1149 SOUTH HILL STREET
LOS ANGELES, CALIFORNIA 90015-2299
TELEPHONE: (213) 765-1156

*Mail to* ↑

2.     **YOU ARE FURTHER ORDERED AS FOLLOWS:**

You are ordered to produce the documents and things described below:

Court file name:     **People v. Dmitri Tatarinov**

Court file No.     **SCD119330**

**PLEASE SEND CERTIFIED COPY OF DOCKET SHEET**

3.     You are not requested to appear in person; however, you are ordered to produce true, legible, and durable certified copies of the above-described documents, in lieu of personal appearance.

4.     The records are to be produced by the date and time shown above in paragraph 1.

5.     IF YOU HAVE ANY QUESTIONS ABOUT THIS SUBPOENA, YOU MAY CONTACT CONCHA CUELLAR-ROQUE  BEFORE THE DATE ON WHICH YOU ARE TO APPEAR AT 213-765-1156.  DISOBEDIENCE OF THIS SUBPOENA MAY BE PUNISHED AS CONTEMPT OF COURT IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA.

Date issued:  June  4, 2001

*Dane C. Dauphine*

Dane Dauphine
Deputy Trial Counsel

EXHIBIT H page 1

H:\Work\Melissa\SCD11930\Sub-L.wpd\fdt

## EXCERPTS OF RECORD p. 32

FROM DISTRICT COURT DOCUMENT 1


<u>Copy of Order Denying Motion to Recall Remittitur,</u>
<u>Vacate Dismissal and Reinstate Appeal, Filed September 20, 2001</u>

Exhibit "I" to the Federal Habeas Petition

Consisting of page I-1 of Doc 1

COURT OF APPEAL - STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION ONE

F I L E D
Stephan M. Kelly, Clerk

SEP 2 0 2001

Court of Appeal Fourth District

PEOPLE OF THE STATE OF CALIFORNIA
    Plaintiff-Respondent
v.
TATARINOV, DIMITRI VALERYEVICH
    Defendant-Appellant
D027293
San Diego County No. SCD119330

THE COURT:

Appellant's motion to recall remittitur, vacate dismissal and reinstate appeal filed on August 30, 2001, is DENIED.

_____
Presiding Justice

cc:  All Parties

Exhibit "I" page 1
EXCERPTS OF RECORD p. 34

FROM DISTRICT COURT DOCUMENT 1

Copy of Order Denying Petition for Review of Motion to RecallRemittitur,
Vacate Dismissal and Reinstate Appeal, Filed December 12, 2001

Exhibit J to the Federal Habeas Petition

Consisting of pageJ-1 of Doc 1

Court of Appeal, Fourth Appellate District, Division One - No. D027293
S101020

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

THE PEOPLE, Plaintiff and Respondent,

v.

DIMITRI VALERYEVICH TATARINOV, Defendant and Appellant.

SUPREME COURT
FILED

DEC 1 2 2001

Frederick K. Ohlrich Clark

DEPUTY

Petition for review DENIED.

GEORGE
_____
Chief Justice

EXCERPTS OF RECORD p. 36
Exhibit J page 1

FROM DISTRICT COURT DOCUMENT 1

<u>Copy of Order of California Court of Appeal</u>
<u>Denying Petition for Writ of Habeas Corpus</u>
<u>Filed June 25, 2002</u>

Exhibit K to the Federal Habeas Petition

Consisting of page K-1 of Doc 1

# COURT OF APPEAL - FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re DIMITRI VALERYEVICH TATARINOV | D039562 |
| on | (San Diego County Super. Ct. No. SCD 119330) |
| Habeas Corpus. | |

F I L E D

JUN 2 5 2002

*Stephan M. Kelly, Clerk*
*Court of Appeal Fourth District*

THE COURT:

The petition for writ of habeas corpus and response have been read and considered by Justices Benke, Huffman and McConnell.

Petitioner has failed to present a prima facie case to set aside the dismissal and reinstate the appeal. Further, petitioner has not shown prejudice flowing from counsel's performance or lack thereof. (*Strickland v. Washington* (1984) 466 U.S. 668, 691-692.) Also, habeas corpus does not serve as a substitute for appeal. Absent special circumstances that excuse a failure to raise issues on appeal, such failure generally precludes review in a post conviction petition for writ of habeas corpus. (*In re Harris* (1993) 5 Cal.4th 813, 829.)

The petition is denied.

McCONNELL, Acting P. J.

Copies to: All parties

Page 1
EXHIBIT K

EXCERPTS OF RECORD p. 38

FROM DISTRICT COURT DOCUMENT 1

<u>Copy of Order of California Supreme Court</u>
<u>Denying Petition for Review of Writ of Habeas Corpus,</u>
<u>Filed August 28, 2002</u>

Exhibit L to the Federal Habeas Petition

Consisting of page L-1 of Doc 1

Court of Appeal, Fourth Appellate District, Division One - No. D039562
**S108092**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re DIMITRI VALERYEVICH TATARINOV on Habeas Corpus

Petition for review DENIED.

SUPREME COURT
# FILED

AUG 2 8 2002

Frederick K. Ohlrich Clerk

DEPUTY

GEORGE

Chief Justice

Page 1
EXHIBIT L

EXCERPTS OF RECORD p. 40

FROM DISTRICT COURT DOCUMENT 1

Copy of Argument from the Federal Petition for Writ of Habeas Corpus
Explaining Tolling Pursuant to 28 U.S.C. Section 2244(d)(1)

Consisting of pages 18 through 20 of Doc 1

tioner placed great reliance on Verhovskoy's legal advice. The attorney-client relationship was particularly strong because Verhovskoy could communicate with petitioner in Russian, petitioner's first language. Exhibits A and B.   On December 24, 2000, petitioner received a letter from Verhovskoy. It tersely said Verhovskoy would no longer represent petitioner. It advised petitioner to retain other counsel. The letter provided no explanation. Exhibit G.   On January 19, 2001, petitioner received a notice from the California State Bar indicating Verhovskoy was "suspended from the practice of law in the State of California for a period of sixty (60) days." Petitioner thereafter retained James R. Patterson to represent him in the immigration matter. Exhibit A, p. 3.

The date of December 24, 2000, is the earliest date that could trigger the provisions of 28 U.S.C. § 2244(d)(1)(D), the day on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. Prior to that time, petitioner was unduly influenced by Verhovskoy's legal advice, which made it a practical impossibility for petitioner to discern Verhovskoy's incompetent representation. It would be reasonable to choose January 2, 2001, as the date from which the statute commenced to run because it would have been quite difficult for petitioner to obtain new legal counsel during the holiday season.

During the one-year period that commenced January 2, 2001, the statute of limitations in 28 U.S.C. § 2244(d)(1) was tolled for substantial periods of time pursuant to the provisions of 28 U.S.C. § 2244(d)(2).   That subsection provides, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."   From the date of January 2, 2001, the statute ran for a period of 240 days commencing January 2, 2001 and concluding August 29, 2001.

On August 30, Attorney Wallingford filed a "Motion to Recall Remittitur, Vacate Dismissal and Reinstate Appeal." The California Court of Appeal denied the motion in an order dated September 20, 2001. Exhibit "I". Petitioner then filed a timely petition for review in the Califomia Supreme Court. It was considered as case S101020 and denied December 12, 2001. Exhibit J. That motion tolled the AEDPA statute of limitations between those dates.

In *Artuz v. Bennett*, 531 U.S. 4, 148 L.Ed.2d 213, 121 S.Ct. 361 (2000), the United States Supreme Court considered whether a prisoner's pro se motion to vacate his judgment of conviction could toll the statute of limitations under 28 U.S.C. § 2244(d)(2). The Court stated that "an application is `properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." *Artuz v. Bennett*, 531 U.S. *supra*, at p. 8 (emphasis omitted) (footnote omitted). "[T]he question whether an application has been `properly filed' is quite separate from the question whether the claims contained in the application are meritorious and free of procedural bar." *Id.* at 9 (emphasis omitted). Thus, the Court upheld the Second Circuit's determination that the statute of limitations was tolled during the time when the state court was considering the prisoner's motion to vacate his conviction, despite the fact that the claims in the motion were procedurally barred under New York law. *Artuz v. Bennett*, 531 U.S. at pp. 7-8, *supra*. Likewise, in *Tillema v. Long*, 253 F.3d 494 (9th Cir. 2001) the Ninth Circuit held that a pro per defendant's motion to vacate illegal sentence, filed in the California courts, tolled the one-year statute even though the motion did not include an issue subsequently raised on federal habeas corpus. *Tillema v. Long*, 253 F.3d at pp. 498-499.

1    If the motions in *Artuz v. Bennett* and *Tillema v. Long* tolled the
2  running of the statute of limitations, there can be no question that petitioner's
3  motion likewise tolled the statute.  Tolling extends for the full period the motion
4  is properly before the state court system, from the initial filing in the lower
5  court to denial of a timely filed petition for review. 28 U.S.C. 2244(d)(2) and
6  see *Nino v. Galaza* 183 F.3d 1003, 1006 (9th Cir. 1999).

7    The statute of limitations in section 2244(d)(1) commenced to run
8  again on December 13, 2001, the day after the California Supreme Court de-
9  nied the petition for review in case S101020.  It ran for 64 days to February
10  14, 2002.  On February 15, 2002, petitioner filed his petition for writ of habeas
11  corpus in the Court of Appeal, case D039562.  On June 25, 2002, the Court of
12  Appeal filed its decision denying the petition for review. Exhibit K.  On July 3,
13  2002, petitioner filed a timely petition for review in the California Supreme
14  Court from denial of the petition for writ of habeas corpus.  It was considered
15  as case S108092 and denied August 28, 2002. Exhibit L.  That petition for writ
16  of habeas corpus again tolled the statute of limitations in 28 U.S.C. 2244(d)(1)
17  while it was pending in the state courts. 28 U.S.C. § 2244(d)(2) and see *Nino*
18  *v. Galaza,* 183 F.3d at p 1006, *supra,* and *Tillema v. Long,* 253 F.3d at p. 502,
19  *supra.*  The statute of limitations again commenced to run on August 29, 2002.
20  Prior to that date, the statute had already run for a period of 304 days between
21  January 2, 2001 and August 29, 2001, and again between December 13, 2001
22  and February 14, 2002.  Therefore, the last day for filing this petition for writ
23  of habeas corpus will be October 28, 2002.  As explained above, that date is
24  based on the statute commencing to run on January 2, 2001.  Even if the court
25  determines that the statute commenced running on December 24, 2000, the last
26  day for filing would be October 18, 2002.
27
28

FROM DISTRICT COURT DOCUMENT 1


<u>Copy of Argument from the Federal Petition for Writ of Habeas Corpus</u>
<u>Explaining How Petitioner Was Prejudiced by</u>
<u>Trial Counsel's Ineffective Assistance</u>

Consisting of pages 24 through 35 of Doc 1

EXCERPTS OF RECORD p. 45

1   in case D027293.  A criminal defendant is entitled to effective assistance of

2   counsel on appeal. *Evitts v. Lucey,* 469 U.S. 387, 83 L.Ed.2d 821, 105 S.Ct.

3   830 (1985).  The most basic duty required of appellate counsel involves prepa-

4   ration and filing of a legal brief setting forth all arguable issues that advance the

5   client's position. *Doyle v. United States,* 721 F.2d 1195, 1198 (9th Cir. 1983).

6   Attorney Verhovskoy utterly failed to perform that duty, causing petitioner's

7   appeal in case D027293 to be dismissed on procedural grounds.  A claim of in-

8   effective assistance of appellate counsel is cognizable in a habeas corpus pro-

9   ceeding. *Murray v. Carrier,* 477 U.S. 478, 488, 91 L.Ed.2d 397, 106 S.Ct.

    2639, 2645 (1986).

10      2.      **Petitioner was prejudiced by counsel's failure to act because**

11              **petitioner had meritorious legal issues to present on appeal.**

12      a)      **On appeal, petitioner could have successfully argued that the**

13              **trial court committed error by failing to instruct the jury that**

                **petitioner had a right to use a reasonable amount of force to**

14              **resist an excessively forceful citizen's arrest.**

15          Petitioner could have obtained substantial relief on appeal had At-

16   torney Verhovskoy provided competent professional assistance.  Petitioner was

17   convicted of robbery on an *Estes* theory. *People v. Estes,* 147 Cal.App.3d 23,

18   27-28 (1983)(robbery conviction affirmed where defendant shoplifted mer-

19   chandise from Sears store and then assaulted a security guard who tried to ap-

     prehend him in the store parking lot).  At trial, testimony presented by the

20   prosecution and the defense provided conflicting descriptions of the fight that

21   occurred between petitioner and Nordstrom security agents in the parking lot.

22   Nordstrom agents said petitioner assaulted them after they asked him to return

23   to the store. RT pp. 69-71, 92-95, 134-135, 276.  Conversely, petitioner said

24   he walked peacefully to his car.  When he started to open it, a Nordstrom agent

25   jumped on him from behind, grabbed his neck and said, "we just want to talk

     to you."  Petitioner was thrown onto the trunk of his car and then to the

                                    24

1  ground. The agent continually applied force until petitioner was handcuffed.

2  R.T. pp. 369-374, 410-412.

3      The jury's resolution of that factual conflict was important, be-

4  cause it created the basis for the robbery conviction in count one.  If petitioner

5  stole merchandise from the store and then used force in the parking lot to avoid

6  apprehension, the crime was robbery. *People v. Estes, supra,* 147 Cal.App.3d

7  at pp. 27-28.  However, if petitioner used reasonable force only to defend him-

8  self against an unlawful use of force by Nordstrom agents, he was not guilty

9  of robbery.  To support that defense, petitioner needed a jury instruction ex-

10  plaining that he could lawfully use reasonable force to repel excessive force

   applied by Nordstrom agents who arrested him.

11      Petitioner's trial counsel explained at the jury instruction confer-

12  ence that he would defend against the robbery charge by arguing that petitioner

13  used force to resist excessive force applied by the Nordstrom agents in making

14  the citizen's arrest.  Counsel told the court:

15      [T]he defense there, your honor, was that [the Nordstrom
       agents] were doing something.  They had no right to physically re-

16      strain the defendant.  <u>He had a right to defend himself.</u>  That was not
       a lawful arrest.

17

18  Emphasis added, R.T. p. 261, also see p. 266.  Counsel added:

       [The Nordstrom agents] were instigating and creating the physical con-

19      frontation."

20  *Ibid.*

21      The trial court recognized that a basic issue presented to the jury

22  for decision involved the difference between petty theft and robbery.  With that

23  in mind, the court gave the jury a number of special instructions explaining the

24  difference between those two offenses.  The court erred by failing to include in

25  those instructions language that explained petitioner's right to use a reasonable

amount of force to defend against excessive force by the Nordstrom agents. [3]

Petitioner's trial counsel told the court at the jury instruction conference that

---

[3] The trial court gave standard instructions defining robbery and petty theft using CALJIC Nos. 9.40 [robbery defined], 9.40.2 [robbery – after acquired intent], 9.41 [robbery – fear – defined], and 9.43 [second-degree robbery as a matter of law], 14.02 [petty theft – defined]. (CT pp. 80-83, 96.) In addition, the court gave the following instructions that related to the distinction between robbery and petty theft:

SPECIAL JURY INSTRUCTION: "Mere theft becomes robbery if the perpetrator, having gained possession of the property without the use of force or fear, resorts to force or fear while carrying away the loot. ¶ In other words, when property is taken with the specific intent to steal but without the use of threat or force or fear and thereafter force or fear is used to prevent the owner from recovering the property, however temporarily, or to facilitate an escape, the crime of robbery is committed. ¶ A slight movement is sufficient for the element of taking. ¶ The robber's escape with the loot is not a necessary element of the crime of robbery. ¶ Robbery does not require that the loot be carried away after the use of force of [sic] fear. (CT p. 84.)

"MERCHANT'S PRIVILEGE" INSTRUCTION: "A merchant may detain a person for a reasonable time for the purpose of conducting an investigation in a reasonable manner whenever the merchant has probable cause to believe the person to be detained is attempting to unlawfully take or has unlawfully taken merchandise from the merchant's premises. ¶ In making the detention the merchant may use a reasonable amount of nondeadly force necessary to protect himself or herself and to prevent escape of the person detained or the loss of tangible or intangible property. ¶ As used in this section: ¶ 'Merchandise' means any personal property, capable of manual delivery, displayed, held or offered for retail sale by a merchant. ¶ 'Merchant' means an owner, operator, and the agent, consignee, lessee or officer of an owner or operator, of any premises used for the retail purchase or sale of any personal property capable of manual delivery." (CT p. 92.)

UNTITLED SPECIAL INSTRUCTION: "The excessive or unreasonable force instructions do not apply to Nordstrom personnel. They apply only to Count 2, the charge of resisting arrest by a Peace Officer, Penal Code Section 148. ¶ However, as the instructions indicate, the crime of robbery requires that the taking be accomplished by force or fear. Thus, the element of force or fear required for robbery must be to facilitate the taking of stolen property, either to prevent the owner from recovering the prop-

26

1   petitioner would defend the robbery charge on a theory that any force he used

2   against Nordstrom agents in the parking lot was a lawful response to excessive

3   force by the Nordstrom agents in making the arrest. RT p. 261. Trial counsel

4   tried hard to get instructions on that point of law. During the jury instruction

5   conference he explained to the court that "robbery involves the use of force or

6   fear to take the property. Here the force we are arguing was in self-defense

7   and protection of his own self and vehicle but he had an absolute right to

    physically defend himself." RT p. 266.

8          The court told trial counsel he could argue that to the jury, imply-

9   ing the court would not give an instruction to that effect. *Ibid.* Counsel per-

10  sisted, saying, "...[T]he defendant had an absolute right to use force. He was

11  being precluded from entering his car. He had no duty to submit to that physi-

12  cal arrest." *Ibid.*

13         Counsel resumed his argument during a subsequent discussion of

14  jury instructions. At that time, he submitted CALJIC No. 9.60, which defines

15  the crime of false imprisonment by force. Counsel said:

16         [T]his was my attempt, as the People's counsel said, "loose at-
           tempt," or best attempt over the course of the evening to come up
17         with an alternate to our discussion in chambers of addressing the issue
           of the rights of a private citizen, security agent, in using force to ar-
18         rest someone and hold him against his will, including the defendant's
           right to resist that confinement.
19

20  RT pp. 490-491. The court noted that CALJIC 9.60 seemed inappropriate,

21  since it defines the crime of false imprisonment. RT p. 491. Trial counsel re-

22  erty or to escape apprehension for the theft." CT p. 93. This instruction

23  necessarily referred to CALJIC Nos. 9.26 and 9.28. Those instructions
    said that a person arrested by a peace officer may use reasonable force to
24  defend himself if the peace officer uses excessive force in making the ar-
    rest. CT pp. 89, 90.
25

                                    27
              PETITION FOR WRIT OF HABEAS CORPUS 28 U.S.C. § 2254
                          EXCERPTS OF RECORD p. 49

1  plied that he modified the instruction so it did not appear to charge the Nord-
2  strom agents with a crime. He said, "what I am trying to accomplish by this is
3  to show that there is possible misconduct here on the part of agents and the
4  right of defendant to defend himself." R.T. p. 491, and see CT pp. 52-53. The
5  court declined to give the modified version of CALJIC No. 9.60. RT pp. 491-
6  492.

7    The trial court had a duty under California law to give a sua sponte
8  instruction telling the jury petitioner had that right. The California Supreme
9  Court has long held that trial courts have a sua sponte duty to instruct on all
10  material issues presented by the evidence. The duty extends to defenses as
11  well as to lesser-included offenses. *People v. Breverman,* 19 Cal.4th 142, 157
12  (1998). However, a distinction is drawn between the two situations. In the
13  case of defenses, a sua sponte instructional duty arises only if it appears the
14  defendant is relying on such a defense, or if there is substantial evidence sup-
15  portive of such a defense and the defense is not inconsistent with the defen-
16  dant's theory of the case. *People v. Breverman, supra,* 19 Cal.4th at p. 157,
    *People v. Elize,* 71 Cal.App.4th 605, 611, 615 (1999).

17    In petitioner's case, it was crystal clear that petitioner relied on a
18  defense theory that he used force in the parking lot to repel excessive force ap-
19  plied by the Nordstrom agents, and not to commit robbery. Trial counsel re-
20  peatedly expressed reliance on that theory, both at the jury instruction confer-
21  ence and in his argument to the jury. R.T. pp. 261, 266, 490-491, 754-755.
    Trial counsel argued to the jury, without the aid of instructional support, that:

22    [t]he force was not associated with the taking. It was not asso-
23  ciated with the taking. It was not used to accomplish the taking, as the
    law requires. <u>Whatever force or fear there may have been, we would
24  submit was a lawful resistance to an unlawful arrest, to an excessive,
    unreasonable use of force.</u>"

25

1  Emphasis added, RT pp. 754-755.  Likewise, petitioner asserted that theory in

2  his testimony.  He testified that Nordstrom agents initiated combat in the park-

3  ing lot by jumping on his back and continuously applying force until he was

4  handcuffed. RT pp. 372-374, 410-412.  Thus, petitioner clearly relied on this

5  defense.  The jury should have received instructions that would have author-

6  ized it to use this theory to decide whether petitioner's use of force in the

7  parking lot was lawful resistance to use of excessive force by the Nordstrom

8  agents.

9          Appropriate language for a sua sponte instruction was readily

10 available.  In conjunction with the section 148 offense charged in this case, the

11 trial court gave CALJIC No. 9.28 [USE OF EXCESSIVE FORCE BY AN OF-

   FICER].  It says:

12          [a] peace officer is not permitted to use unreasonable or excessive
            force in making or attempting to make an otherwise lawful arrest.
13          ¶ If an officer does use unreasonable or excessive force in mak-
            ing or attempting to make an arrest, the person being arrested may
14          lawfully use reasonable force to protect himself.

15 CT p. 90.  CALJIC No. 9.28 could have been modified by simply substituting

16 the word "citizen" or the words "store security agent" for the words "officer,"

17 or "peace officer."  In that way, the instruction would have correctly estab-

18 lished that petitioner had a right to use reasonable force to resist excessive

19 force employed by the Nordstrom agents in executing the arrest.

20          The trial court compounded the error when it answered a jury

21 question by saying that the excessive or unreasonable force instructions appli-

22 cable to peace officers did not apply to the Nordstrom agents.  The instruction

23 erroneously implied that petitioner had no right to use force against the Nord-

24 strom agents, even if they used excessive force in arresting him.  Immediately

25 after the court instructed the jury, a juror submitted a written question to the

   court.  It said:

1        Re resisting arrest element, does the element of excessive force, num-
2    ber 148, apply to the peace officer and the Nordstrom's loss preven-
     tion team in the detention of the defendant or just the peace officer?
3
4    RT pp. 725-726. This was an important question. It appeared to address peti-

     tioner's legal theory that he used force in response to excessive force by the
5
     Nordstrom agents, and therefore did not commit robbery.
6
7           In discussing the juror's question with the court, trial counsel ar-

8    gued that the peace officer instructions should apply to the Nordstrom person-

9    nel because, "I think there is an issue of unreasonable force, making an unlaw-

     ful arrest. And I think it definitely applies." RT p. 726. Trial counsel was
10
11   correct. The juror's question addressed the language of CALJIC No. 9.28,

     discussed above, which says a peace officer cannot use excessive force in
12
     making an arrest. It authorizes the person arrested to use reasonable force to
13
     resist a peace officer who makes an otherwise lawful arrest with excessive
14
     force. The principle set forth in that instruction would necessarily apply
15   equally to a citizen's arrest.

16          However, the trial court ruled that the legal principle concerning

17   excessive force in making an arrest did not apply to the Nordstrom personnel.

18   RT p. 726. The court stated,

19       ...and as our special instruction says, if force or fear is used to prevent
         the owner from recovering the property, however temporarily or to fa-
20       cilitate escape, then the crime of robbery is committed. But if the
         force is used for some other reason, such as an unprovoked attack,
21       then it would be relevant.

22   RT p. 727. The court appeared to be referring to its special instruction that

23   explained the difference between "mere theft" and robbery, which contains

24   some of the language the court used in its explanation. CT p. 84. However,

25   that special instruction did not contain language saying, "if the force is used for

     some other reason, such as an unprovoked attack..." *Ibid.*

It appears the trial court failed to understand the relevance of an instruction telling the jury that petitioner could lawfully use reasonable force to repel a citizen's arrest involving excessive force. The jury needed to know that it would be lawful for petitioner to use a reasonable amount of force, even if he had actually stolen a jacket in the store, if the Nordstrom agents used excessive force to arrest him in the parking lot.

The court said it would not give the instruction as to the Nordstrom agents because,

> your version of the facts and your argument is that [petitioner] dropped the jacket in the store; he left the jacket in the store and then left. Whatever he did, under your version, was completed at that time. The fact that [the Nordstrom agents] may have gone out there and if they did use excessive force against him, does not apply to whether he committed a petty theft or not.

Emphasis added; RT p. 728 (the court essentially repeated this analysis at RT p. 732). The court's statement reveals a basic misunderstanding of the reason why petitioner needed the instruction. Petitioner needed it to defend against the robbery charge, not petty theft. The jury evidently believed petitioner carried the jacket into the parking lot, and rejected his testimony that he dropped it inside the store. Otherwise, the jury would have found him guilty of attempted petty theft, using a lesser-included offense instruction tied to that factual scenario. CT pp. 94-96, RT pp. 697-698. Assuming the jury believed petitioner left the store with the jacket, however, the question remained whether he used force in the parking lot in an effort to escape with the jacket, or as a reasonable response to an excessively forceful citizen's arrest. Petitioner needed an instruction informing the jury that he could use reasonable force to resist excessive force in effecting the citizen's arrest, even if he actually stole the jacket. That instruction would have let the jury know petitioner could lawfully use force during the arrest without escalating the offense to robbery.

1    Petitioner was entitled, under California law, to an instruction sup-
2  porting his defense under that factual scenario. In *People v. Elize, supra,* 71
3  Cal.App.4th 605, the defendant had a physical struggle with two women.
4  During the struggle he drew a gun which fired one time, nearly injuring one
5  woman. *Id.* at p. 607. The trial court refused to instruct on self-defense be-
6  cause the defendant testified the shooting was accidental. *Id.* p. 610. The ap-
7  pellate court reversed and remanded for a new trial, holding that the self-
8  defense instructions should have been given. The court explained that the jury
9  could have disregarded the defendant's testimony about an accidental shooting
10  and found self-defense from other evidence. It was reversible error to not in-
11  struct on self-defense. *Id.* pp. 612, 616. That same rationale applies here. The
12  jury could have rejected petitioner's testimony about dropping the jacket in the
13  store, but believed he used force in the parking lot to repel excessive force by
14  Nordstrom agents. The instruction would have informed the jury that peti-
15  tioner could lawfully use force in that circumstance.

It was extremely important that the jury understand petitioner
could use reasonable force to resist an excessively forceful citizen's arrest.
The special instruction distinguishing robbery from "mere theft" said "force
...used to prevent the owner from recovering the property, however temporar-
ily...," would amount to robbery. CT p. 84. If the jury thought petitioner had
no lawful right to use force against the Nordstrom agents, the jury would at-
tribute any force he did use against them as force escalating theft to robbery.
There would simply be no permissible reason for him to use force. Under the
special instruction distinguishing robbery from "mere theft," the impermissible
use of force would necessarily result in a verdict finding petitioner guilty of
robbery, because it delayed the effort to make the citizen's arrest and recover
the property.

PETITION FOR WRIT OF HABEAS CORPUS 28 U.S.C. § 2254
EXCERPTS OF RECORD p. 54

1    Instead of telling the jury that petitioner could use reasonable force

2 to resist an excessively forceful citizen's arrest, the court fashioned and gave

3 the following instruction in response to the juror's question:

4    The excessive or unreasonable force instructions do not apply
to Nordstrom personnel. They apply only to count 2, the charge of
5    resisting arrest by a Peace Officer, Penal Code Section 148. ¶ How-
ever, as the instructions indicate, the crime of robbery requires that
6    the taking be accomplished by force or fear. Thus, the element of
force or fear required for robbery must be to facilitate the taking of
7    stolen property, either to prevent the owner from recovering the prop-
8    erty or to escape apprehension for the theft. [4]

9 CT p. 93, RT pp. 734-736. That instruction was defective. It failed to tell the

10 jury that petitioner could lawfully use force against the Nordstrom agents if

11 they used excessive force to arrest him. As explained above, if the jury

12 thought petitioner had no lawful right to use force under any circumstance, pe-

13 titioner lost any reasonable opportunity to have the jury accept his theory of de-

14 fending against the robbery charge. Had Attorney Verhovskoy presented this

15 legal argument on direct appeal, it is likely that petitioner would have prevailed.

Therefore, petitioner is entitled to relief on habeas corpus.

16    b)    **On appeal, petitioner could have successfully argued that the
17    trial court committed error by failing to instruct the jury that
the crime of theft is a lesser-included offense within the
18    crime of robbery.**

19    Petitioner was convicted of robbery in count one on a theory that

20 he shoplifted in a Nordstrom department store, then used force against Nord-

21

22 [4]    Appellant's trial counsel acquiesced in this instruction when asked by the
court if it was satisfactory. RT pp. 734-735. This should not be deemed a
23    waiver of the issue concerning instruction on the right to resist an exces-
sively forceful citizen's arrest, however. Petitioner's counsel had argued
24    forcefully for such an instruction immediately prior to the court's ruling.
RT pp. 726-731. The court had forcefully told counsel that he was not
25    entitled to the instruction. RT pp. 726-733.

1    strom security agents when they confronted him outside in the parking lot.

2    The court instructed the jury that attempted petty theft was a lesser-included

3    offense of robbery. CT p. 94.  That instruction was predicated on petitioner's

4    testimony that he started to steal a jacket, then dropped it inside the store and

5    left with no stolen merchandise. RT p. 494. The court explained:

6         [T]he court feels obligated to give the lesser-included offense instruc-
          tion of attempted petty theft in this case.  The defendant has made a

7         judicial confession on the witness stand that he intended to take the
          jacket, that he did take the jacket, that he started to walk out with the

8         jacket, and he thought someone was following him, that he then
          dropped the jacket in the store and went out without the jacket. ¶ Now

9         that is an attempted petty theft.  And the court feels obligated to give

10        that instruction and have a verdict form for attempted petty theft, so
          we will give the instruction on 14.02, which defines theft, the instruc-

11        tion on attempt and then 17.10, which talks about the lesser included
          offense.

12

13   RT p. 494, CT pp. 94-96. The court failed, however, to instruct and provide a

14   verdict form on the lesser-included offense of theft, a violation of section 484.

15   This was error.

16        The evidence at trial required instruction on the lesser-included of-

     fense of theft.  If the jury believed that petitioner stole merchandise and took it

17   into the parking lot, the jury had to decide whether that act constituted robbery

18   or theft.  If the jury doubted that petitioner used force to facilitate the theft, the

19   jury should not have found petitioner guilty of robbery, but rather the lesser-

20   included offense of theft.

21        Under California law, theft is a necessarily lesser-included offense

22   within robbery. *People v. Ramkeesoon,* 39 Cal.3d 346, 351 (1985), *People v.*

23   *Estes, supra,* 147 Cal.App.3d at p. 28.   Robbery has the additional element of a

24   taking by force or fear.  The trial court had a duty to instruct on theft even in

     the absence of a request by petitioner. *People v. Ramkeesoon, supra,* 39 Cal.3d

25   at p. 351.  A trial court must instruct, sua sponte, on the general principles of

1   law relevant to issues raised by the evidence. *People* v. *Wickersham*, 32 Cal.3d

2   307, 323-324 (1982), disapproved on other grounds in *People v. Barton*, 12

3   Cal.4th 186 (1995). Encompassed within this requirement is the duty to in-

4   struct on a lesser-included offense, even if not requested, when the evidence.

5   raises a question as to whether all the elements of the charged offense are pre-

6   sent and there is evidence that would justify a conviction of the lesser offense.

7   *People* v. *Melton*, 44 Cal.3d 713, 746 (1988).

8           The necessity for instructions on lesser-included offenses is based

9   on the defendant's constitutional right to have the jury determine every material

10  issue presented by the evidence. *People* v. *Tinajero*, 19 Cal.App.4th 1541,

11  1547 (1993). Fulfillment of this obligation ensures the jury will consider the

12  full range of possible verdicts - not limited by the strategy, ignorance, or mis-

13  takes of the parties. The jury should not be constrained by the fact that the

14  prosecution and defense have chosen to focus on certain theories. *People* v.

15  *Wickersham, supra,* 32 Cal.3d at p. 324. When one of the elements of the of-

16  fense charged remains in doubt, but the defendant is clearly guilty of some of-

17  fense, the jury is likely to resolve its doubts in favor of conviction. *People* v.

18  *Ramkeesoon, supra,* 39 Cal.3d at p. 351. Proper instruction on a lesser-

19  included offense avoids an unwarranted all-or-nothing choice for the jury and

20  ensures the verdict is neither harsher nor more lenient than the evidence merits.

    *People* v. *Wickersham, supra,* 32 Cal.3d at p. 324.

21          In petitioner's case, the jury needed the option of finding petitioner

22  guilty of theft to accurately determine his culpability. The error in failing to in-

23  struct on theft as a lesser-included offense caused a miscarriage of justice.

24  Had Attorney Verhovskoy presented this issue on appeal, it is likely that peti-

25  tioner would have prevailed. *People* v. *Breverman*, 19 Cal.4th 142, 178, fn. 26

    (1998). Therefore, petitioner is entitled to relief on habeas corpus.

DISTRICT COURT DOCUMENT 11


Report and Recommendation of Magistrate Roger T. Benitez
RE: Granting Motion to Dismiss Petition for Writ of Habeas Corpus

16 pages, including Appendix to Report and Recommendation

FILED

03 APR -2 PM 1:58

CLERK. U.S DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DIMITRI V. TATARINOV,  ) Civil No. 02cv2029-W (BEN)
                       )
            Petitioner, )
v.                     ) **REPORT AND RECOMMENDATION**
                       ) **RE: GRANTING MOTION TO**
SUPERIOR COURT OF THE STATE OF ) **DISMISS PETITION FOR WRIT OF**
CALIFORNIA, COUNTY OF SAN       ) **HABEAS CORPUS**
DIEGO,                 )
                       )
            Respondent. )
_____

## I. INTRODUCTION

Petitioner, Dimitri V. Tatarinov, was tried by a jury in August, 1996 and convicted of second degree robbery. He was sentenced to probation which terminated on October 18, 2002, after the filing of his habeas petition.

Although never incarcerated for the crime, Tatarinov now seeks federal habeas corpus relief from the lingering effects of his conviction pursuant to 28 U.S.C. § 2254. He alleges a single ground for relief. Specifically, he alleges the trial court committed reversible error in giving a jury instruction on self-defense which could have been remedied on appeal. However, he received ineffective assistance of appellate counsel when his retained counsel failed to file an opening brief and his direct appeal was dismissed.

1    The trial finished on August 12, 1996 and the appeal was dismissed on April 28,

2  1997 (with the Remittitur issued on July 1, 1997).  The instant Petition was filed on

3  October 11, 2002.  The Respondent now moves to dismiss arguing that the Petition is

4  barred by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d).

5    After considering all of the pleadings and relevant lodgements, and for the reasons

6  set forth below, it is recommended that the Motion to Dismiss the Petition for Writ of

7  Habeas Corpus be GRANTED.

8                      ## II.  THE STATUTE OF LIMITATIONS

9  ### A.  THE AEDPA ONE-YEAR STATUTE OF LIMITATIONS

10    Respondent contends that the Petition is time barred by the Antiterrorism and

11  Effective Death Penalty Act ("AEDPA").[1]  AEDPA amended 28 U.S.C. § 2244 by adding

12  subdivision (d), which provides for the one-year limitation period for state prisoners to file

13  habeas corpus petitions in federal court.  Section 2244(d) states, in pertinent part:

14    (d)(1)  A 1-year period of limitation shall apply to an application for a writ of
       habeas corpus by a person in custody pursuant to the judgment of a State
15    court.  The limitation period shall run from the latest of :

16        (A)    the date on which the judgment became final by the conclusion of
               direct review or the expiration of the time for seeking such review;
17
        (B)    the date on which the impediment to filing an application created by
18             State action in violation of the Constitution or laws of the United
               States is removed, if the applicant was prevented from filing by such
19             State action;

20        (C)    the date on which the constitutional right asserted was initially
               recognized by the Supreme Court, if the right has been newly
21             recognized by the Supreme Court and made retroactively applicable
               to cases on collateral review; or
22
        (D)    the date on which the factual predicate of the claim or claims
23             presented could have been discovered through the exercise of due
               diligence.
24
      (2)    The time during which a properly filed application for State post-conviction
25           or other collateral review with respect to the pertinent judgment or claim is
             pending shall not be counted toward any period of limitation under this
26

27    [1] AEDPA applies to Petitioner's case as he filed his Petition in 2002. *Lindh v. Murphy*, 521
   U.S. 320 (1997) (AEDPA applies to petitions for writs of habeas corpus filed in federal court after its
28  effective date of April 24, 1996).  Prior to AEDPA, there was no statute of limitations for federal
   habeas relief.

1  subsection.

2  28 U.S.C.A. § 2244(d) (West Supp. 2002).

3      Petitioner does not fall within the statutory tolling provisions of § 2244(d)(1)(B) or

4  (C) as he does not: (a) show any impediment to filing an application by State action in

5  violation of the United States Constitution; or (b) rely on a constitutional right newly

6  recognized by the United States Supreme Court. Instead, this Court must determine

7  whether §2244(d)(1)(A) or (D) applies and the date from which (under either section) the

8  one-year period began to run. To complicate the matter, Petitioner's counsel deceived him

9  by telling him an appeal was being pursued when in reality, it had been abandoned and

10  eventually dismissed.

11      **1.  Applying §2244(d)(1)(A)**

12      Under § 2244(d)(1)(A) the one-year limitation period begins to run on the date the

13  judgment becomes final either by the conclusion of direct review or the expiration of the

14  time for seeking such review.[2] Petitioner was sentenced on September 10, 1996. He timely

15  filed a notice of appeal on October 25, 1996. Then his attorney failed to file an appeal

16  brief. Because no brief was filed, the appeal was dismissed on April 28, 1997. Thus, thirty

17  days later (*i.e.*, May 28, 1997) becomes the first critical date for purposes of identifying the

18  start of the one-year time clock. This is because under California law, a judgment becomes

19  "final" 30 days after the Court of Appeal orders an appeal dismissed. Rule 24 of the

20  California Rules of Court states, "A decision of a Court of Appeal becomes final as to that

21  court 30 days after filing....An order dismissing an appeal involuntarily is a decision for

22  purposes of the preceding sentence." Consequently, under 2244(d)(1)(A), the decision

23  became final on May 28, 1997 and the one-year limitation period expired on May 28, 1998.

24  Under this scenario, there would be no statutory tolling under 2244(d)(2) because there

25  was no pursuit of state collateral review during this period, and his federal petition would

26  be four years too late.

27

28

---

[2] A time line of significant events is attached for the reader's convenience. See Appendix.

3

EXCERPTS OF RECORD p. 61

### 2. Applying § 2244(d)(1)(D)

There is, however, a second scenario which points to a later starting date. Under § 2244(d)(1)(D), the clock begins ticking on the day "the factual predicate of the claim...could have been discovered through the exercise of due diligence." Here, the claim centers on the loss of Petitioner's appeal rights by the failure of his counsel to do anything beyond filing a notice of appeal. The question thus becomes, "when could petitioner have discovered his appeal had been dismissed had he exercised due diligence?"

In this case, his retained counsel, Mr. Vladimir Verhovsky, Esq., was less than candid and misrepresented the status of the appeal on several occasions. For example, Petitioner's wife declared, "[f]rom late fall of 1996 through the summer of 1998, I continually asked Mr. Verhovsky how the robbery appeal was going." Declaration of Patricia Lynn Jacks-Tatarinov, Petition for Writ of Habeas Corpus, Exhibit "A," at 2. She continues, Verhovsky "gave responses such as, 'appeals take several months,' 'appeals can take years,' 'the appeals court must believe we have some merit to the case as they have not responded'...and 'the court is still looking into the matter.'" *Id.* Petitioner in his own declaration explains that after he was aware the appeal had been dismissed, "I asked [Verhovsky] several times to do something about it. Each time he said he would. Finally in September 1999 Mr. Verhovsky filed a motion to reinstate the appeal." Petition, Exhibit "B," at 1.

### a. Petitioner's Contention: January 2, 2001

Petitioner argues that the statute should run (under 2244(d)(1)(D)) from January 2, 2001. Petition, at 17-18. He argues that date because Verhovsky continued to represent him on various matters through December 24, 2000. On December 24th, he received a letter from Verhovsky ending, without explanation, his representation in all matters. *See* Petition, Exhibit "G." Approximately three weeks later, Petitioner received notice from the State Bar that Verhovsky had been suspended from the practice of law. Petitioner defends himself saying, "[p]rior to that time, petitioner was unduly influenced by Verhovsky's legal advice, which made it a practical impossibility for petitioner to discern Verhovsky's

1    incompetent representation." Petition, at 18. He explains further that, the "attorney-client

2    relationship was particularly strong because Verhovsky could communicate with petitioner

3    in Russian, petitioner's first language." *Id.*

4    ### b. Respondent's Contention: Fall 1998

5    Not surprisingly, Respondent argues that under this second scenario the statute

6    should run from an earlier date: the fall of 1998. Memorandum in Support of Motion to

7    Dismiss, at 7-8. Respondent argues that "the factual predicate for Petitioner's claim was

8    *discoverable* with the exercise of due diligence well before either December 24, 2000 or

9    January 2, 2001....Petitioner had *actual knowledge* that Verhovskoy failed to file the

10   opening brief and the appeal had been dismissed, no later than Fall 1998." *Id.* (emphasis

11   in original). In support of this position, Respondent points to the declarations of Petitioner

12   and his wife. Specifically, Respondent notes that Petitioner's wife, on her own, called the

13   court during the summer of 1998 and found out "the appeal was not active." *Id.* at 8

14   (quoting Declaration of Patricia Jacks-Tatarinov, Petition, Exhibit "A"). Petitioner's wife

15   then called Verhovsky and Verhovsky "admitted he had not filed the appeal." Respondent

16   continues this line of argument by pointing to Petitioner's own declaration wherein he

17   relates, "[i]n 1998, Mr. Verhovskoy admitted that he had not filed the appeal." *Id.* at 8

18   (quoting Declaration of Dimitri Tatarinov, Petition, Exhibit "B"). Thus, building the

19   argument from Petitioner's own evidence, Respondent argues that Tatarinov was actually

20   aware that the appeal had been dismissed by the fall of 1998. Respondent contends that

21   it is the date of Petitioner's actual knowledge of the dismissed appeal that starts the clock

22   running (as opposed to Petitioner's knowledge of the legal significance of the dismissed

23   appeal.) *Id.* at 9. Respondent concludes that with the clock beginning to tick in the fall of

24   1998, the statute of limitations had certainly run by 2002, the year the federal Petition was

25   filed.

26   ### c. The Due Diligence Date: The Summer of 1998

27   In sum, under 2244(d)(1)(D), Petitioner identifies January 2001 as the critical date,

28   while Respondent picks the fall of 1998 as the date the clock began ticking. Respondent's

5

02cv2029

1    argument is generous. It is based upon Petitioner's *actual* knowledge. Section

2    2244(d)(1)(D), however, starts the clock running on the day "the factual predicate of the

3    claim...*could have been discovered* through the exercise of due diligence." (Emphasis

4    added.) In other words, the day Petitioner could have discovered that the appeal had been

5    lost, had he exercised appropriate diligence.

6        If one in Petitioner's place was extremely diligent, one could call the court of appeals

7    every week checking on the status of the appeal. Such a person would have discovered the

8    truth in early May 1997. If one checked every quarter, one would have discovered the

9    dismissal no later than the fall of 1997. If one checked only once a year, a more reasonable

10   approach, the dismissal would still have been discovered in the fall of 1997. It took almost

11   two years before Petitioner's wife inquired of the court. Even if that were deemed to be

12   within the outer boundaries of "due diligence," the statute of limitations would have begun

13   to run in the summer of 1998. Certainly, the fact that Petitioner's wife actually called the

14   court, strongly suggests Petitioner could have exercised the same diligence.

15       This Court finds that had Petitioner exercised due diligence, notwithstanding his

16   attorney's misrepresentations, Petitioner could have discovered the fate of his appeal in the

17   summer of 1998. As a result, the statute of limitations expired one year later in the

18   summer of 1999 – approximately three years prior to the filing of the instant Petition.

19   Finally, there would be no entitlement to a statutory tolling of the clock because nothing

20   was done to reinstate the appeal or collaterally attack the conviction between the summer

21   of 1998 and the summer of 1999 when Petitioner's time ran out.

22       ### d. An Aside: "Retriggering" the Statute

23       As an aside, though neither party addresses it, one could argue that an ineffective

24   assistance of appellate counsel claim is *sui generis* for purposes of the statute of limitations.

25   This is because all other types of claims revolve around the time of trial. In contrast, an

26   appellate counselor's failure does not occur or become evident until long after the trial. In

27   the context of Petitioner's case, one might argue that Petitioner could not have known

28   whether his appellate attorney had injured his appeal until December 12, 2001. That is

6

02cv2029

EXCERPTS OF RECORD p. 64

1  because up until 2001, his appeal might have been reinstated by the various corrective

2  motions actually brought. When it was filed in September 1999, the motion to set aside

3  the dismissal *might* have been successful. Likewise, when the second motion to vacate the

4  dismissal was filed in August 2001, the court of appeal *might* have granted relief. Finally,

5  when the unsuccessful motion to reinstate the appeal was itself appealed to the California

6  Supreme Court, the Supreme Court *might* have granted relief and reinstated Petitioner's

7  appeal. That, outcome *would* have eviscerated the foundation of his ineffective assistance

8  claim. He would have finally been able to present his meritorious arguments on appeal.

9  Consequently, one might argue, it was not until December 12, 2001, when the California

10  Supreme Court denied the appeal of the appeals court decision to refuse to reinstate the

11  appeal, that the federal claim of ineffective assistance of appellate counsel became ripe.

12      The problem with this theory is that it lacks finality and encourages repetitive

13  frivolous motion practice as a means for extending the running of the statute of limitations.

14  Under this theory, one could wait years before filing a motion to reinstate an appeal, or file

15  successive motions in the vain hope that one sympathetic ear would reinstate the

16  previously lost appeal rights. Under this theory, a federal habeas petition claiming

17  ineffective appellate assistance could always be made timely and the statute of limitations

18  would be reduced to a curiosity.

19      Two other courts have rejected similar arguments. In those cases, petitioners had

20  failed to take direct appeals from their convictions. While they did not argue ineffective

21  assistance of appellate counsel, they did eventually file motions seeking permission for a

22  late or delayed appeal. Once in federal court, the petitioners argued that the habeas statute

23  of limitations should not run until after their motions to pursue late appeals were denied.

24  The courts decided that AEDPA's one-year limitations clock could not be "retriggered" in

25  this fashion and that to allow a retriggering by this route would emasculate the statute.

26  *Searcy v. Carter*, 246 F.3d 515 (6th Cir. 2001); *Raynor v. Dufrain*, 28 F.Supp. 2d 896 (S.D.

27  N.Y. 1998). The reasoning of the *Raynor* decision is compelling:

28      This is a position that we cannot endorse, because it would effectively
        eviscerate the AEDPA's statute of limitations. Leave to file a late notice of

7

02cv2029