UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIMITRI VALLERVEICH TATARINOV,<br><br>　　　　　Petitioner,<br><br>v.<br><br>SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF SAN DIEGO, *et al.*<br><br>　　　　　Respondents. | Civil No. 07cv2033-L(NLS)<br><br>**ORDER DENYING PETITION FOR HABEAS CORPUS AND VACATING ORDER FOR STAY OF REMOVAL** |

Petitioner Dimitri Vallerveich Tatarinov, represented by counsel, filed a Consolidated Petition seeking habeas corpus relief under 28 U.S.C. § 2241 ("Petition"). Petitioner is in custody of the Department of Homeland Security, Immigration and Customs Enforcement ("ICE") Detention and Removal Center in this District pending his removal to Russia. He filed a motion for stay pending removal. Respondents Superior Court of the State of California, County of San Diego ("State") and Office of the Chief Counsel, Dept. of Homeland Security; U.S. Attorney, Southern District; and ICE Detention and Removal Unit (collectively "Federal Respondents") opposed the motion. The motion for stay pending removal was granted on May 9, 2008.

/ / / / /

The parties have fully briefed the Petition and filed supplemental briefing pursuant to the order filed May 22, 2008. The State filed a motion to dismiss, which Petitioner opposed. On June 1, 2008, Petitioner filed a motion for release pending the conclusion of this proceeding, which is opposed by all Respondents.

Petitioner challenges two expired state court sentences on which the removal order is based. He is no longer in custody for purposes of the convictions he is challenging. In addition, no exceptions to the rule precluding collateral challenges to state court convictions in immigration proceedings apply in this case. Therefore, despite the unfortunate circumstances which led to Petitioner's current situation, the Petition is **DENIED**. The State's motion to dismiss and Petitioner's motion for release are **DENIED** as moot. The May 9, 2008 order staying removal is **VACATED**.

The underlying facts, contained in the Petition, Petitioner's motion to stay, Petitioner's Excerpt of Record ("ER"), Declaration of Samuel W. Bettwy filed in opposition to the Petition ("Bettwy Decl."), and the State's Notice of Lodgment ("Lodgment"), are not disputed. Petitioner, a native of Russia and citizen of the former Soviet Union, came to the United States as a non-immigrant student in May 1992. The same year, he applied for asylum based on threats he had received in the former Soviet Union. He married a United States citizen in 1994. In 1995, he was granted Conditional Permanent Resident Status based on marriage. In 1996, he filed a petition to remove this status; however, the petition was not adjudicated until June 9, 2000. (Bettwy Decl. Ex. at 54.)

In August 1995, Petitioner was convicted of misdemeanor petty theft and was sentenced to one year probation. In August 1996, Petitioner was caught taking a jacket from a department store. Because of allegations of use of force against a store security guard, Petitioner was charged with robbery. At trial, he was represented by Vladimir Verhovskoy. Petitioner and his subsequent counsel, Jerome Wallingford, believe Petitioner had a valid defense to the charge of robbery, however, due to Mr. Verhovskoy's negligence, the jury was not instructed on the defense. (Mtn. to Stay Ex. C.) In Mr. Wallingford's opinion, the case was a shoplifting incident and should have been resolved as a misdemeanor. However, Petitioner was found guilty of

robbery ("1996 Conviction"). (*Id.*) He was sentenced to 270 days in custody. The custodial sentence was suspended and Petitioner was granted three years of probation.

Represented by Mr. Verhovskoy, Petitioner timely appealed the 1996 Conviction. However, Mr. Verhovskoy failed to file the appellant's opening brief and the appeal was dismissed on April 28, 1997. When Petitioner inquired about the status of the appeal, Mr. Verhovskoy did not tell him that the appeal was dismissed, but gave vague and misleading explanations why a decision had not yet been issued. (ER at 130.)

On April 13, 1998, Petitioner was apprehended by the Immigration and Naturalization Service ("INS")[1] and placed in removal proceedings. (Bettwy Decl. Ex. at 1, 3-6, 10.) Pending processing of Petitioner's request for a hearing to determine whether he could remain in the United States, Petitioner was released from INS custody on bond.

On October 19, 1998, on Mr. Verhovskoy's advice, Petitioner pled guilty to petty theft – another shoplifting charge. Based on the prior robbery conviction, he was convicted of a felony ("1998 Conviction"). He was sentenced to 364 days in custody, but the sentence was suspended and Petitioner was placed on probation. This offense was added to the charges and factual allegations in Petitioner's removal proceedings. (*See* Bettwy Decl. Ex. at 11, 13.) Petitioner successfully completed probation and has no further criminal record.[2]

Due to counsel's failure to inform Petitioner that the appeal of the 1996 Conviction was dismissed, Petitioner did not learn of this fact until the summer of 1998, when his wife inquired directly with the court. (ER at 130.) After being confronted in September 1999, Mr. Verhovskoy filed a motion to set aside the dismissal and reopen the appeal as well as a habeas corpus petition.

On September 9, 1999, Petitioner filed a habeas corpus petition in this District (case no. 99cv1911-IEG(LSP)) pursuant to 28 U.S.C. § 2241, challenging the constitutionality of the use

---

[1] On March 1, 2003, the detention and removal duties of the INS were transferred to the newly-formed ICE. *Resendiz v. Kovensky*, 416 F.3d 952, 954 n.1 (9th Cir. 2005).

[2] Starting in 1998, Petitioner began therapy with a psychiatrist to address the shoplifting incidents, which were allegedly not caused by financial need but by psychological problems. (ER at 122; Mtn to Stay Ex. D.)

of his underlying criminal judgments as the basis for removal.  The petition was dismissed without prejudice as premature.  (*See* order filed Jan. 19, 2000 in case no. 99cv1911.)  The court held it was premature to consider Petitioner's constitutional challenge before the INS had a chance to finally rule on whether he was removable based on the prior convictions.

In the meantime, in state court proceedings, Mr. Verhovskoy filed a motion to reopen the appeal of the 1996 Conviction.  The motion included only a vague explanation for failure to file the opening brief ("financial and medical catastrophes") and did not explain the two-year delay between the dismissal and motion to reopen.  (ER at 14-22.)  It was denied on September 24, 1999.  (ER at 24.)  Mr. Verhovskoy advised Petitioner that nothing could be done to revive the appeal.  He advised filing a motion in the Superior Court to expunge the conviction.  On April 13, 2000, Petitioner's motion to set aside the 1996 Conviction was denied.  (ER at 26.)  On November 3, 2000, the court denied Petitioner's motion to terminate probation associated with the 1996 Conviction.

On December 22, 2000, during the pendency of immigration proceedings, Mr. Verhovskoy informed Petitioner he was withdrawing from representation.  (ER at 30.)  On January 19, 2001, Petitioner received a copy of the State Bar of California's Stipulation Form - Actual Suspension, indicating Mr. Verhovskoy had been suspended by the State Bar of California in September 2000.  (ER at 130.)  On January 28, 2001,[3] Petitioner filed a complaint against Mr. Verhovskoy with the State Bar.  (ER at 128-30.)  Petitioner had been represented by Mr. Verhovskoy since 1996, and had paid him over $20,000 in fees for representation in immigration proceedings and criminal defense.  Based on Petitioner's complaint and State Bar investigation, Mr. Verhovskoy admitted to some violations.  On February 5, 2003 he was again suspended from the practice of law.  (ER at 131-34.)  In 2001, following Mr. Verhovskoy's withdrawal, Petitioner retained new criminal defense and immigration counsel.  (ER at 115.)

/ / / / /

---

[3] The January 28, 2000 date shown on The State Bar of California Complaint Form (ER at 128) appears to be an error, because the complaint refers to events taking place after that date.  (*Cf.* ER 128 & 130 (referring to events in September 2000 and thereafter.)

In the removal proceedings, the Immigration Judge found Petitioner removable as an alien convicted of crime of moral turpitude within five years of admission and as an alien convicted of two or more crimes involving moral turpitude. Petitioner sought relief, including adjustment of status, asylum and relief under the convention against torture, but he was unsuccessful due to his criminal record. On December 13, 2001 Petitioner was ordered deported to Russia. (ER at 116; Bettwy Decl. Ex. at 9-34.) On January 14, 2003, the removal order was affirmed by the Board of Immigration Appeals ("BIA"). (Bettwy Decl. Ex. at 35-36.) Challenging the Immigration Judge's decision to deny asylum and adjust his status, Petitioner appealed to the Ninth Circuit. The Ninth Circuit construed the appeal as a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, and transferred the case to this District (case no. 04cv2595-W(BLM)). The petition was denied on May 2, 2005. (Bettwy Decl. Ex. at 53 *et seq*.) On February 9, 2007, the Ninth Circuit denied review. Petitioner has been in ICE custody since June 28, 2007.

In state court proceedings, on August 30, 2001, Petitioner filed a motion to reinstate the appeal of his 1996 Conviction with the California Court of Appeal. The motion was denied (ER at 34) and the California Supreme Court denied review (ER at 36). On February 15, 2002, Petitioner filed a habeas corpus petition with the California Court of Appeal, which was denied. (ER at 38.) Again, the California Supreme Court denied review. (ER at 40.)

On October 11, 2002, Petitioner filed a petition for habeas corpus pursuant to 28 U.S.C. § 2254 in this District (case no. 02cv2029-W(BEN)) based on ineffective assistance of counsel on appeal of the 1996 Conviction. The petition was dismissed based on the statute of limitations. (ER at 76-86.) On February 9, 2007, the dismissal was affirmed by the Ninth Circuit (ER at 96-98) and petition for a rehearing was denied on September 28, 2004 (ER at 106).

On September 25, 2006, Petitioner filed in the San Diego County Superior Court motions for new trial[4] of the 1996 and 1998 Convictions based on ineffective assistance of counsel.

---

[4] Although the motions were styled as "Nonstatutory Motion to Vacate a Judgment Entered After Court Trial on Grounds of Ineffective Assistance of Counsel" and "Nonstatutory Motion to Vacate a Plea Entered on Grounds of Ineffective Assistance of Counsel" (Lodgment Ex. 1 at 17 *et seq*. & 78 *et seq*.), the only relief requested was a new trial (*id.* at 23 & 83).

(Lodgment Ex. 1 at 17 *et seq.* & 78 *et seq.*)  The motions were denied (Lodgment Ex. 1 at 57, 117) and the appeal to the California Court of Appeal was unsuccessful (ER at 136).  On September 12, 2007, the California Supreme Court denied petition for review.  (ER at 137.)

On October 19, 2007, Petitioner filed the instant Petition pursuant to 28 U.S.C. § 2241. Although Petition states that Petitioner "moves that the court grant his U.S.C. § 2241 writ and vacate the judgments based upon the violation of his constitutional rights" (Pet. at 2), it also suggests that it is not directed toward the state court judgments but rather the state court's order denying his motions for new trial, and that Petitioner's purpose is to avoid removal from the United States – the only remaining consequence of the state court criminal judgments.  The Petition could therefore be viewed as a challenge to the state court convictions, state court's denial of his motions, or the present confinement by the immigration authorities.  Petitioner was ordered to clarify this ambiguity.  (*See* order filed May 22, 2008 at 1-2.)  According to his supplemental briefing, he "is not directly challenging his criminal convictions, [but] is challenging the State's dismissal of his non-statutory motions in violation of the Due Process Clause . . .."  (Pet'r's Supp. Brief filed Jun. 8, 2008 at 4.)

Federal Respondents contend that district court jurisdiction is foreclosed by 8 U.S.C. § 1252, as amended by the REAL ID Act, Pub. L. No. 109-13, Stat. 231, Div. B (May 11, 2005). The Act "eliminated district court habeas corpus jurisdiction over orders of removal and vested jurisdiction to review such orders exclusively in the courts of appeals."  *Puri v. Gonzalez*, 464 F.3d 1038, 1041 (9th Cir. 2006).

Petitioner has unequivocally stated he is not challenging his final order of removal. (Pet'r's Traverse filed Jan. 3, 2008 at 2-4.)  However, Federal Respondents argue that his only real purpose is to indirectly challenge that order.  (Resp. Supp. Brief filed Jun. 3, 2008 at 1, 2.) "Post-REAL ID Act cases considering the applicability of § 1252 have . . . distinguished between challenges to orders of removal and challenges that arise independently."  *Singh v. Gonzalez*, 499 F.3d 969, 978 (9th Cir. 2007).  The jurisdictional bar of the REAL ID Act does not apply to indirect challenges to orders of removal.  *Id.*, citing *Puri*, 464 F.3d at 1041.  For example, the Ninth Circuit held in *Singh v. Gonzalez* that the REAL ID Act did not bar district

court review under § 2241 of an ineffective assistance claim arising out of the immigration counsel's failure to timely appeal the BIA decision affirming the order of removal. 499 F.3d 969. Because Petitioner's ineffective assistance claims in this case arise from state court proceedings, which are even less related to the order of removal than the claims made in *Singh*, the REAL ID Act does not bar habeas review in this case.[5]

Finding that 8 U.S.C. § 1252 does not preclude district court jurisdiction in this case, the court considers Petitioner's claims. Petitioner maintains that the state court's denial in 2006 of his motions for new trial triggered a right to pursue habeas relief in federal court. In 2006, Petitioner filed in state court motions styled as "Nonstatutory Motion to Vacate a Judgment Entered After Court Trial on Grounds of Ineffective Assistance of Counsel" and "Nonstatutory Motion to Vacate a Plea Entered on Grounds of Ineffective Assistance of Counsel" respectively. (Lodgment Ex. 1 at 17 *et seq*. & 78 *et seq*.) The only relief requested in each motion was a new trial pursuant to California Penal Code § 1181. (*Id.* at 23 & 83.) The motions were denied because they were filed after the judgment in each case had been entered. (*Id*. at 57 & 117; Lodgment Ex. 2 at 5-10.) The court reasoned that it lacked jurisdiction under California law to grant a motion for new trial brought after the entry of judgment. (Lodgment Ex. 2 at 5-10, citing Cal. Penal Code §§ 1181,1182 & *People v. Smyers*, 2 Cal. App. 3d 666 (1969).)

Petitioner has not cited any authority to show that the state court's denial of his motions violated his constitutional rights. "[F]ederal habeas corpus relief does not lie for errors of state law. . . . [I]t is not the province of a federal habeas court to reexamine state-court determinations
/ / / / /

---

[5] Federal Respondents also argue that the REAL ID Act, 8 U.S.C. § 1252(g), strips this court of jurisdiction to issue an order to stay Petitioner's removal. (Resp. Supp. Brief filed Jun. 3, 2008 at 1, 3.) This argument is contradicted by *Ali v. Gonzalez*, 421 F.3d 795 (9th Cir. 2005) ("*Ali II*"). It held that the REAL ID Act did not apply to a habeas petition claiming that the petitioners should not be removed to a country without a functioning government, "because petitioners d[id] not challenge or seek review of any removal order." *Ali II*, 421 F.3d at 797 n.1 (order denying reh'g) (for factual background see *Ali v. Gonzalez*, 346 F.3d 873 (2003) ("*Ali I*")). The court also affirmed a district court order temporarily releasing the petitioners from immigration custody. *Ali II*, 421 F.3d at 797; *see also Ali I*, 346 F.3d at 875-76, 891-92. Federal Respondents' argument therefore appears without merit. However, because the order staying Petitioner's removal is vacated on other grounds, the court need not resolve this issue here.

of state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Accordingly, the denial of Petitioner's motions does not provide a basis for habeas relief.

What remains of the Petition are the underlying constitutional claims of ineffective assistance of counsel arising from representation related to the 1996 and 1998 Convictions. Petitioner's theory of ineffective assistance as to the 1996 Conviction is that Mr. Verhovskoy failed to file the opening brief on appeal and misled Petitioner about the status of his appeal, thus depriving him of his first appeal as of right. (Pet. at 9-12.) The theory as to the 1998 Conviction is that Mr. Verhovskoy represented Petitioner notwithstanding a conflict of interest. (*Id*. at 12-15.) Petitioner argues that the conflict arose from Mr. Verhovskoy's previous representation which resulted in the 1996 Conviction. "In criminal cases, an attorney's representation of a former client may preclude renewed representation of that client in a new matter if the prior representation resulted in a client's conviction[, because] the client may want to attack the prior conviction on the ground of incompetent representation." Paul W. Vapnek *et al.*, Cal. Practice Guide: Professional Responsibility (2008) (citing *People v. Bailey*, 9 Cal. App. 4th 1252, 1254-55 (1992) & San Diego County Bar Association Ethics Opinion 1995-1), *cited* in Pet. at 13.

The State argues that the court lacks jurisdiction to consider these claims because Petitioner is not in custody.[6] (State Resp's Response filed Jun. 4, 2008 at 4-5.) The state court sentences imposed for the convictions Petitioner is attacking have expired. The "in custody" element requires "that the habeas petitioner be 'in custody' under the conviction or sentence under attack at the time his petition is filed." *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989). "[O]nce the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual 'in custody' for the purposes of a habeas attack upon it." *Id*. at 492. Immigration consequences, the

---

[6] Petitioner requested the court to disregard this argument, contending that the State had waived it by not raising it in its motion to dismiss. (Pet'r's Supp. Brief filed Jun. 8, 2008 at 3-4.) The State raised this issue in opposition to Petitioner's motion for stay of removal. (*See* Opp'n to Mtn for Stay of Removal filed Dec. 3, 2007 at 2.) The issue of Petitioner's custody and exceptions to this requirement were addressed in the Order Granting Petitioner's Motion for Stay of Removal because they are relevant to the resolution of this case. Petitioner's request to disregard the State's argument is therefore denied.

only consequences of the 1996 and 1998 Convictions remaining in this case, are considered collateral, and therefore insufficient, for purposes of the "in custody" requirement. *See Resendiz v. Kovensky*, 416 F.3d 952, 956 (9th Cir. 2005).

Petitioner admits that he is no longer in state custody. (Pet'r's Reply re: Stay of Removal filed Dec. 10, 2007 at 2.)  He argues that his immigration custody is sufficient for the habeas relief he seeks.  The Petition, however, is expressly not challenging the immigration custody or the underlying order of removal.  It is challenging the 1996 and 1998 Convictions.  The validity of these convictions "can only be tested in an action against the state, which has the greatest interest in preserving its judgment[s] and the best ability to either correct or defend [them]." *Contreras v. Schlitgen*, 122 F.3d 30, 33 (9th Cir. 1997), *aff'd on add'l grounds in Contreras v. Schlitgen*, 151 F.3d 906 (9th Cir. 1998) ("*Contreras II*").  In the absence of an applicable exception, federal habeas relief against the State is foreclosed because Petitioner is no longer in custody under the convictions he is challenging.

"The Supreme Court has identified two possible exceptions to the 'in custody' requirement . . . .  The first is a *Gideon*[7] violation, or a complete failure of counsel. . . .  The second . . . is a possible 'rare' exception, not yet defined, where 'no channel of review was actually available to a defendant with respect to a prior conviction.'" *Resendiz*, 416 F.3d at 959 (internal citations omitted).

The *Gideon* exception was established in *Custis v. United States*, 511 U.S. 485 (1994).  It held that a federal defendant could not at the sentencing stage attack a prior conviction used to enhance the federal sentence. *Id*. at 487.  The only exception was the right to appointment of counsel recognized in *Gideon*. *Id*. at 496.  The defendant in *Custis*, who claimed that his underlying convictions were obtained in violation of his right to effective assistance of counsel, sought to extend his right to collaterally attack a prior conviction beyond the right to appointment of counsel to ineffective assistance claims. *Custis*, 511 U.S. at 496.  The court held

---

[7] *Gideon v. Wainwright*, 372 U.S. 335 (1963). [*Gideon* held that a defendant's Sixth Amendment right to counsel applied to the states through the Fourteenth Amendment. The court reversed a denial of a habeas petition brought by an indigent criminal defendant where the state court denied his motion for appointment of counsel at trial.]

that the *Gideon* exception did not apply to ineffective assistance claims and drew a line between ineffective assistance and failure to appoint counsel. *Id.* The *Gideon* exception and the rationale of *Custis* were adopted in the habeas context by *Daniels v. United States*, 532 U.S. 374 (2001) (§2255) and *Lackawanna County Dist. Atty v. Coss*, 532 U.S. 394 (2001) (§ 2254).

Petitioner argues that the *Gideon* exception applies in this case because his counsel's failure to perfect the appeal denied him the opportunity to present the merits of his appeal, which was more than a mere attorney error. (Pet'r's Resp. filed May 28, 2008 at 10.) He relies on *Evitts v. Lucey*, 469 U.S. 387 (1985), and *Anders v. California*, 386 U.S. 738 (1967), which were decided before *Custis*.

*Evitts* addressed facts similar to Petitioner's appeal of his 1996 Conviction. The petitioner was convicted in state court after a jury trial. *Evitts*, 469 U.S. at 389. Although his retained counsel filed a timely notice of appeal, he failed to perfect it and the appeal was dismissed. *Id*. at 389-90. The subsequent efforts to reinstate the appeal and vacate the underlying judgment were unsuccessful. *Id*. at 390. The petitioner then sought habeas relief in federal court. *Id*. Unlike Petitioner here, when he filed his habeas petition, the petitioner in *Evitts* was still in custody under the conviction he was challenging. *See id*. at 391 & n.4. The court addressed the issue whether the right to effective assistance of counsel applied on the first appeal as of right, and found that it did. *Id*. at 392, 397. It reasoned that "the promise . . . that a criminal defendant has a right to counsel on appeal – like the promise of *Gideon* that a criminal defendant has a right to counsel at trial – would be a futile gesture unless it comprehended the right to the effective assistance of counsel." *Id*. at 397.

Unlike *Custis*, *Evitts* did not consider the distinction between the right to appointment of counsel and the right to effective representation. In discussing the facts of the case, the court commented:

> Our cases dealing with the right to counsel – whether at trial or on appeal – have often focused on the defendant's need for an attorney to meet the adversary presentation of the prosecutor. . . . Such cases emphasize the defendant's need for counsel in order to obtain a *favorable* decision. The facts of this case emphasize a different, albeit related, aspect of a counsel's role, that of expert professional whose assistance is necessary in a legal system governed by complex rules and procedures for the defendant to obtain a decision at all – much less a favorable

> decision – on the merits of the case. In a situation like that here, counsel's failure was particularly egregious in that it essentially waived a respondent's opportunity to make a case on the merits; in this sense, it is difficult to distinguish respondent's situation from that of someone who had no counsel at all.

*Evitts*, 469 U.S. at 394 n.6 (internal citations omitted, emphasis in original). This comment suggests that a counsel's failure to perfect the appeal, depriving the defendant of presenting the merits of his appeal, essentially rises to the level of no representation at all. Rather than distinguishing between the appointment of counsel and effective representation, *Evitts* highlighted the importance of effective representation by reasoning that "a party whose counsel is unable to provide effective representation is in no better position than one who has no counsel at all." *Id*. at 396.

Extending this reasoning to conclude that a failure to file the first appeal as of right amounts to a *Gideon* violation would collapse the distinction between appointment of counsel and counsel's effectiveness which was drawn in *Custis*. In carving out the *Gideon* exception, *Custis* noted that a *Gideon* violation was unique. *Custis*, 511 U.S. at 494 ("historical basis in our jurisprudence of collateral attacks for treating the right to have counsel appointed as unique"); 496 ("failure to appoint counsel for an indigent defendant was a unique constitutional defect"). It was not merely a constitutional violation but a jurisdictional defect. *Id.* at 494 ("jurisdictional significance to the failure to appoint counsel); *see also Lackawanna*, 532 U.S. at 404 ("failure to appoint counsel for an indigent is a unique constitutional defect rising to the level of a jurisdictional defect, which therefore warrants special treatment among alleged constitutional violations"). The court was careful to distinguish the *Gideon* exception from ineffective assistance and narrowly defined it as a violation of an indigent defendant's right to appointment of counsel:

> [T]here has been a theme [in the Supreme Court case law] that failure to appoint counsel for an indigent defendant was a unique constitutional defect. [Defendant] attacks his previous convictions claiming the denial of the effective assistance of counsel, that his guilty plea was not knowing and intelligent, and that he had not been adequately advised of his rights in opting for a "stipulated facts" trial. None of these alleged constitutional violations rises to the level of a jurisdictional defect resulting from the failure to appoint counsel at all.

*Custis*, 511 U.S. at 496 (citation omitted). Accordingly, an ineffective assistance claim does not

constitute a *Gideon* violation. *Evitts*, which addressed ineffective assistance on appeal, does not support Petitioner's argument that his counsel's failure to perfect the appeal amounted to a *Gideon* violation.

Petitioner also relies on *Anders*, which involved an appointed counsel who failed to file a brief on first appeal as of right because he did not believe the appeal had any merit. *Id.* at 739. The counsel so informed the court, which then denied the defendant's motion for appointment of new counsel and affirmed the conviction. *Id.* at 739-40. The California Supreme Court's denial of the defendant's habeas petition was reversed. *Id.* at 740-41. *Anders* has been characterized as finding that the defendant was deprived of his right to appointed counsel guaranteed by *Gideon*. *Foote v. Del Papa*, 492 F.3d 1026, 1030 (9th Cir. 2007) (discussing *Anders*). Like *Evitts*, *Anders* suggests that failure to perfect the first appeal as of right amounts to more than ineffective assistance. However, like *Evitts*, *Anders* did not consider the distinction between failure to appoint counsel and ineffective assistance of counsel, which was subsequently delineated in *Custis*. *Anders* therefore does not support Petitioner's argument any more than *Evitts* does.

Notwithstanding the egregiousness of Mr. Verhovskoy's error in failing to perfect the appeal and concealing the fact from Petitioner, Petitioner states an ineffective assistance claim rather than a *Gideon* claim.[8] *Custis* holds that the *Gideon* exception does not apply to ineffective assistance claims but only to violations of an indigent defendant's right to appointment counsel. *Custis*, 511 U.S. at 496. Petitioner's attack on the 1996 Conviction therefore does not warrant the *Gideon* exception.

The same reasons apply to Petitioner's attack on the 1998 Conviction. He argues that his 1998 Conviction was unconstitutional because it was obtained in violation of his right to effective assistance of counsel when Mr. Verhovskoy represented him notwithstanding a conflict

---

[8] Petitioner himself characterized his claim as ineffective assistance. (*See* Pet. at 9-12; *see also id.* at 16 ("Verhovskoy's failure to submit a brief for the direct appeal constitutes ineffective assistance of counsel.").)

of interest.[9] Relying on *Jamison v. Lockhart*, 975 F.2d 1377 (8th Cir. 1992), Petitioner argues that the conflict of interest amounted to a *Gideon* violation. (Pet'r's Resp. filed May 28, 2008 at 13.) The trial counsel in *Jamison* represented the defendant despite a conflict of interest. *Jamison*, 975 F.2d at 1379. After the defendant was convicted, he requested the counsel to file an appeal. The counsel agreed, but then took no steps to file it. *Id*. The defendant subsequently filed a federal habeas petition, claiming ineffective assistance of counsel based on a conflict of interest.[10] *Id*. at 1378. The court noted, in the context of deciding whether the petitioner should be excused from procedural default, that sufficient cause could potentially "exist when the error of the attorney was so bad that the lawyer ceases to be an agent of the petitioner." *Id*. at 1380 (internal quotation marks and citations omitted). *Jamison* does not support the proposition that a conflict of interest amounts to a *Gideon* exception. Under *Custis*, the *Gideon* exception does not include ineffective assistance claims and is limited to the failure to appoint counsel. Accordingly, the *Gideon* exception does not apply in this case.

The second exception to the custody requirement was recognized in *Daniels*. 532 U.S. at 383-84; *see also Lackawanna*, 532 U.S. at 405-06. This exception may apply "in rare cases in which no channel of review was actually available to a defendant with respect to a prior conviction, due to no fault of his own." *Daniels*, 532 U.S. at 383. "For example, a state court may, without justification, refuse to rule on a constitutional claim that has been properly presented to it. Alternatively, after the time for direct or collateral review has expired, a defendant may obtain compelling evidence that he is actually innocent of the crime of which he was convicted, and which he could not have uncovered in a timely manner." *Lackawanna*, 532 U.S. at 405. This exception is extremely narrow because "a defendant properly bears the consequences of either foregoing otherwise available review of a conviction or failing to

---

[9] *See* Pet. at 12-15; *see also id*. at 16 ("Verhovskoy's conflict of interest constitutes a claim of ineffective assistance of counsel . . . .").

[10] Unlike in Petitioner's case, the alleged conflict in *Jamison* preceded and possibly motivated the counsel's failure to file the appeal. In addition, unlike Petitioner, at the time of filing his petition, the petitioner in *Jamison* was apparently still in custody under the conviction he was challenging. *See Jamison*, 975 F.2d at 1378 (thirty year prison sentence).

successfully demonstrate the constitutional error." *Lackawanna*, 532 U.S. at 405. Petitioner argues that the exception applies in his case because his constitutional claims were not heard on the merits.

Petitioner cites *Jamison*, where an ineffective assistance claim was procedurally barred because the petitioner had not raised it in state court and the time to do so had expired by the time he filed a federal habeas petition. *Jamison*, 975 F.2d at 1378. The petitioner argued that "his continued reliance on counsel whose loyalty was tainted by conflict of interest prevented him from discovering the conflict of interest problem until it was too late to pursue an appeal in state courts." *Id*. at 1379. The court remanded the case for development of the record and consideration whether the delay in presenting the claim was attributable to the petitioner or to the counsel's divided loyalties. *Id*. at 1380.

Unlike the petitioner in *Jamison*, Petitioner here pursued post-conviction relief in state and federal court after the dismissal of his appeal of the 1996 Conviction. In 1999, he filed a motion to reopen the appeal (ER at 24); in 2000, he filed a motion to expunge the underlying conviction (ER at 26); in 2001, he filed a motion to reinstate the appeal (*id*. at 34); in February 2002, he filed a habeas petition in the California Court of Appeal (*id*. at 38); in October 2002, he filed a § 2254 habeas petition in this District (*id*. at 76-86); and in 2006, he filed a motion for new trial in state court (Lodgment Ex. 1 at 17 *et seq.* & 78 *et seq.*). All of these efforts and related appeals were unsuccessful.

Petitioner's failure to secure timely review of the 1996 Conviction could initially be blamed on Mr. Verhovskoy's anemic efforts to reopen the appeal and expunge the conviction. However, this can not be said for Petitioner's subsequent efforts. His § 2254 petition was time barred. The court considered Petitioner's arguments for equitable tolling, which were based on the same facts as his present challenge to the 1996 Conviction. He argued then, as he does now, that Mr. Verhovskoy's failure to file the appellate brief and subsequent concealment of the dismissal caused the delay which robbed him of the opportunity to present the merits of his claim. Upon consideration of these arguments, the court found that equitable tolling did not save his § 2254 petition. (Lodgment Ex. 9 at 8-10.) Specifically, after Petitioner discovered in 1998

that his appeal had been dismissed, after his motion to reinstate the appeal had been denied and the denial affirmed in the fall of 1999, and after he had learned in December 2000 of Mr. Verhovskoy's withdrawal, Petitioner still waited an unreasonably long time to protect his federal habeas rights. (*Id*. at 9.) The court's finding that the petition was barred by the statute of limitations and could not be saved by equitable tolling was affirmed by the Ninth Circuit in August 2004. (Lodgment Ex. 10.) Petitioner waited for another two years, until September 2006, to file his motion for new trial and raise his ineffective assistance claims.

Accordingly, channels of review were available to Petitioner and he pursued them but was unsuccessful. To the extent Petitioner was unsuccessful because he was untimely, the untimeliness was not entirely due to his counsel's incompetence or disloyalty. After discovering the facts underlying his ineffective assistance claim, Petitioner waited an unreasonably long time to protect or pursue his rights to review. In *Resendiz v. Kovensky*, the court declined to apply this exception because, like in this case, "channels for review not only existed, but also were pursued." 416 F.3d at 959.

As to the 1998 Conviction, Petitioner did not pursue any channels of review until 2006. He neither appealed nor petitioned for habeas relief. (*See* Pet. at 6-7.) His first attempt at collateral review was his motion for new trial in 2006. (*Id*.) Petitioner has presented no evidence or argument why the failure to pursue the available channels of review of this conviction is not attributable to him. In cases such as this, the second exception has been held inapplicable. *See Daniels*, 532 U.S. at 384.

Based on the foregoing, neither exception to the "in custody" requirement applies in this case. Therefore, to the extent the Petition is asserted against the State, it is precluded.

In the alternative and notwithstanding the "in custody" requirement, the same exceptions apply to the rule precluding collateral attacks in federal proceedings on the validity of an underlying state court conviction. *See Custis*, 511 U.S. at 497 (denying challenge to state convictions used to enhance a subsequent federal sentence when the petitioner "was still 'in custody' for purposes of his state convictions at the time of his federal sentencing"); *Lackawanna*, 532 U.S. at 401-02 (denying § 2254 challenge to a prior state sentence used to

enhance a subsequent state sentence when the petitioner "satisfie[d] § 2254 'in custody' requirement"). Specifically, "when a habeas petition attacks the use of a prior conviction as a basis for INS custody, . . . there can be no collateral review of the validity of the underlying conviction except for *Gideon* claims." *Contreras II*, 151 F.3d at 908.[11] The second exception was subsequently recognized in *Daniels*. If the court were to construe the Petition, contrary to Petitioner's own characterization, as a challenge to his immigration custody,[12] the Petition would nevertheless be denied because, as discussed above, neither exception applies in this case.

Although the court is sympathetic to Petitioner's unfortunate situation, it is without authority to grant relief. Accordingly, the Petition is **DENIED**. The State's motion to dismiss and Petitioner's motion for release are **DENIED** as moot. Order Granting Petitioner's Motion for Stay of Removal, dated May 9, 2008, is **VACATED**.

**IT IS SO ORDERED.**

DATED: July 10, 2008

M. James Lorenz
United States District Court Judge

COPY TO:

HON. NITA L. STORMES
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL

---

[11] Federal Respondents assert that the REAL ID Act overruled *Contreras*, including its application of the *Gideon* exception. (Resp. Supp. Brief filed Jun. 3, 2008 at 2.) They cite no authority in support of this proposition and the court is aware of none. Based on the discussion above regarding this court's jurisdiction in light of the REAL ID Act, it appears that *Contreras* remained intact. Furthermore, the position that *Contreras* was overruled is contrary to the position previously taken by Federal Respondents in this case. (*See* Return in Opp'n to Pet. filed Dec. 21, 2007 at 4 -5 (relying on *Contreras*); Resp. in Opp'n to Request for Stay of Removal filed Dec. 3, 2007 at 2 (relying on *Contreras*).) However, because the court finds that the *Gideon* exception is not applicable for other reasons, it need not resolve this issue here.

[12] *See* Pet'r's Resp. filed May 28, 2008 at 4 ("This habeas challenge is not attacking the use of a prior conviction as a basis for INS custody . . ..").  The court notes, however, that Petitioner's assertions that he is not challenging his immigration custody appears inconsistent with his motions for stay of removal and release pending the outcome of this Petition.